UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE ALONSO and MARCELO JUAREZ FLORES
on behalf of themselves and all other similarly
situated,

                              Plaintiffs,

        -against-

NEW DAY TOP TRADING, INC.,

                              Defendant.

18cv4745 (PAE) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE PAUL A. ENGELMAYER, U.S.D.J.:**

On May 30, 2018, plaintiffs Jose Alonso ("Alonso") and Marcelo Juarez Flores

("Flores") commenced this action pursuant to the Fair Labor Standards Act (the "FLSA"),

29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law (the "NYLL"), §§ 190, *et. seq.*, and 650,

*et seq.*, to recover unpaid overtime wages, unpaid spread-of-hours pay, liquidated damages,

statutory damages, prejudgment interest, and attorneys' fees and costs from defendant New Day

Top Trading, Inc. ("Defendant").  After the filing of the Complaint, five other individuals who

purported to have been similarly situated to the Named Plaintiffs with respect to Defendants'

allegedly unlawful wage-and-hour practices – Andres Maldonado ("Maldonado"), Jose Felix

Perez ("Perez"), Rafael Soriano ("Soriano"), Gustavo Martinez Tapia ("Tapia"), and William

Velos ("Velos") – filed notices pursuant to 29 U.S.C. § 216(b), indicating that they consented to

join the action to assert their own FLSA claims.  For purposes of this Report and

Recommendation, this Court will refer to Alonso and Flores as the "Named Plaintiffs," and the

five individuals who later consented to join the action as the "Opt-In Plaintiffs" (all, collectively,

"Plaintiffs").

This matter is currently before this Court for a damages inquest and to report and recommend as to the damages that should be awarded to Plaintiffs upon Defendants' default. (*See* Dkt. 47.)  For the reasons discussed below, this Court concludes that the Named Plaintiffs are entitled to recover damages under both the FLSA and the NYLL, and that, upon Defendant's default, damages should be awarded to these plaintiffs under the NYLL, which affords them greater relief.  Overall, I recommend that Alonso be awarded damages and prejudgment interest in the amount of $183,026.99, plus additional prejudgment interest calculated to the date of entry of final judgment, and that Flores be awarded damages and prejudgment interest in the $140,093.32, also with additional prejudgment interest to the date of final judgment.

On the other hand, this Court concludes that, because the Opt-In Plaintiffs failed to serve Defendant with their consent-to-join notices (evidencing the scope of the claims they wished to assert in this case) until after the Court had issued a default judgment, the default judgment should be vacated to the extent it grants judgment in favor of these additional plaintiffs.  Should the Court disagree with this conclusion, and determine that Defendant, by other means, had received constitutionally adequate notice of the Opt-In Plaintiffs' claims against it, then I would still recommend that the damages awarded to the Opt-In Plaintiffs be less than what they seek in their inquest submissions.  Specifically, as the language of their consent notices was explicitly limited to the assertion of FLSA claims, I would recommend that damages be awarded to these plaintiffs only under the FLSA, and not the NYLL.  Should the Court decide that damages should be awarded to the Opt-In Plaintiffs, I would recommend that Perez be awarded $172,224.72, that Maldonado be awarded $87,000.00, that Soriano be awarded $93,453.30, that Tapia be awarded $229,153.84, and that Velos be awarded $83,250.00 – all under the FLSA, and without prejudgment interest.

Finally, although I recommend that Plaintiffs be awarded attorneys' fees and costs in this case, I recommend that the amounts awarded be sharply reduced from the amounts sought. If the Court agrees that the default judgment should be vacated as to the Opt-In Plaintiffs, then I recommend that the Named Plaintiffs be awarded attorneys' fees in the amount of $78,576.75 and costs in the amount of $2,227.77. If, in contrast, the Court were to confirm the default judgment in favor of the Opt-In Plaintiffs and award them damages, then I would recommend that Plaintiffs be awarded the somewhat higher amounts of $104,769.00 in attorneys' fees and $2,970.36 in costs, reflecting the additional work performed in connection with the Opt-In Plaintiffs' claims.

## BACKGROUND

### A.     Factual Background

Given Defendant's default, the well-pleaded allegations contained in the Complaint, as summarized below, are deemed to be true, except for those allegations relating to damages. (*See* Discussion *infra,* at Section (I)(A)(1)-(2); Complaint, dated May 30, 2018 ("Compl.") (Dkt. 1).) The facts set out below are taken from the Complaint, and also, where indicated, from the more detailed recitations contained in Declarations submitted by Plaintiffs. (*See* Declaration of Molly Brooks in Support of Proposed Findings of Fact and Conclusions of Law, dated Mar. 29, 2019) ("Brooks Decl.") (Dkt. 53), Ex. A (Declaration of Jose Alonso, dated Mar. 28, 2019 ("Alonso Decl.") (Dkt. 53-1)); Ex. B (Declaration of Marcelo Flores, dated Mar. 27, 2019 ("Flores Decl.") (Dkt. 53-2)); Ex. C. (Declaration of Jose Felix Perez, dated Mar. 27, 2019) (Dkt. 53-3)); Ex. D (Declaration of Andres Maldonado, dated Mar. 27, 2019 ("Maldonado Decl.") (Dkt. 53-4)); Ex. E (Declaration of Rafael Soriano, dated Mar. 27, 2019 ("Soriano Decl.") (Dkt. 53-5)); Ex. F

(Declaration of Gustavo Martinez Tapia, dated Mar. 27, 2019 ("Tapia Decl.") (Dkt. 53-6));

Ex. G (Declaration of William Velos, dated Mar. 29, 2019 ("Velos Decl.") (Dkt. 53-7)).)

### 1.   The Named Plaintiffs' Hours and Pay

#### a.   Alonso

According to the Complaint, Alonso was employed by Defendant as a forklift driver in

Brooklyn and Woodside (Queens) warehouses, from approximately January 2014 to July 2016.

(Compl. ¶ 6; *see also* Alonso Decl. ¶ 3.)[1]   According to the Complaint, he worked six days per

week, "starting at 6:00 a.m. and ending between 4:00 p.m. and 5:00 p.m. each day." (Compl.

¶ 8.) In his Declaration, he explains that he worked 10-hour shifts Monday through Saturday and

an additional hour at least three days each week, estimating from this that he generally worked

63 hours per week (slightly less than the 65-hours per week alleged in the Complaint). (*See*

Alonso Decl. ¶ 10; Compl. ¶ 9.) For his work, Alonso states that he was paid a "lump sum cash

payment of $600.00 each week, regardless of the number of hours [he] worked." (Alonso Decl.

¶ 13.)

Alonso alleges that, "[p]ursuant to Defendant's policy, pattern, and/or practice," he was

not paid overtime wages for the hours he worked in excess of 40 hours per week. (Compl. ¶¶ 7,

9, 54; Alonso Decl. ¶ 11.) He also claims that he did not receive "spread-of-hours" pay, in that

he was not compensated at an additional hour of minimum wage for the hours he worked in

excess of 10 hours per day. (*See* Compl. ¶ 55; Alonso Decl. ¶ 12.) He further asserts that he was

---

[1] This Court notes that there are no allegations in the Complaint of any conduct by
Defendant that occurred within the Southern District of New York, but the Named Plaintiffs
allege that Defendant's principal place of business is within this District (*see* Compl. ¶ 20), such
that venue here is proper (*see id.* ¶ 32). In any event, improper venue is an affirmative defense
that is waived upon a defendant's default. *See* Fed. R. Civ. P. 12(h); *see also Gerety v. Sunrise
Exp., Inc., No.* 95cv2090 (HB), 1996 WL 19047, at *2 (S.D.N.Y. Jan. 18, 1996) (Defendant
"waived his defense of improper venue by defaulting").

never provided with any wage statements or wage notices.  (Compl. ¶ 59; Alonso Decl. ¶¶ 16, 17.)

**b.   <u>Flores</u>**

The Complaint alleges that Flores was employed by Defendant as a driver's assistant at warehouses in Queens, New York, from approximately June 2014 to July 2015.  (Compl. ¶ 6; *see also* Flores Decl. ¶ 3.)  According to the Complaint, he "generally worked the following scheduled hours:  six days each week, starting at 7:00 a.m. and ending between 8:00 p.m. and 11:00 p.m. each day."  (Compl. ¶ 15.)  In his Declaration, however, Flores states that he usually started working at 6:00 a.m. each day, and – for apparent examples of his daily hours, which he claimed varied "depending on whether deliveries ran late" – he asserts that he typically worked until 8:00 or 9:00 p.m. on Mondays, until 8:00 or 8:30 p.m. on Tuesdays, and until 11:00 p.m. on Fridays.  (Flores Decl. ¶ 10.)  Overall, Flores now estimates that he "regularly worked approximately 87 hours and 45 minutes to 96 hours and 45 minutes per week" (*id*. ¶ 11), an estimate that is notably in excess of what he pleaded in the Complaint, which alleges that he "generally worked approximately 75 to 85 hours per week" (Compl. ¶ 16).  As a driver's assistant, Flores asserts that he was paid "a lump sum cash payment of $640.00 each week regardless of the number of hours [he] worked."  (Flores Decl. ¶ 13.)

Like Alonso, Flores alleges that, pursuant to an unlawful policy, pattern or practice of Defendant, he was not paid overtime wages for the hours he worked in excess of 40 hours per week.  (Compl. ¶¶ 14, 16, 54; Flores Decl. ¶ 11.)  He also similarly asserts that he was not compensated at an additional hour of minimum wage for the hours he worked in excess of 10 hours per day (*see* Compl. ¶ 55; Flores Decl. ¶ 12), and that he was not provided with wage statements or wage notices (Compl. ¶ 59; Flores Decl. ¶¶ 16-17).

### 2.    The Opt-In Plaintiffs' Hours and Pay

Although the Complaint includes general allegations to the effect that other employees were similarly situated to the Named Plaintiffs with respect to Defendant's pay policies and practices, it was not amended to include any specific factual allegations regarding the Opt-In Plaintiffs, and thus the facts relating to these additional plaintiffs are taken entirely from the Declarations they have submitted in connection with this damages inquest.  As summarized below, all of the Opt-In Plaintiffs assert, in their submitted Declarations, that they (like the Named Plaintiffs) worked for Defendant as a forklift driver and/or a driver's assistant, that they worked more than 40 hours per week, that they were paid a fixed weekly salary in cash, and that they were denied overtime compensation.

### a.    Perez

Perez states in his Declaration that he was employed by Defendant as a driver's assistant from approximately August 2012 through March 2016 and from approximately December 2016 through January 7, 2017, and that he was employed as a forklift driver from approximately April 2016 to December 2016.  (*See* Perez Decl. ¶ 3.)  He asserts that he worked six days a week during his employment with Defendant, as follows:  (1) from August 2012 through March 2016, he worked from 4:00 a.m. to 4:00 or 5:00 p.m. on Mondays and Saturdays, and from 6:00 a.m. to 4:00 p.m. Tuesday through Friday, for a total of approximately 65 hours per week; (2) from April 2016 through November 2016, he worked from 4:00 a.m. to 4:00 p.m., Monday through Saturday, for a total of approximately 72 hours per week; and (3) from December 2016 through January 7, 2017, he worked from 6:00 a.m. to 4:00 p.m. or 5:00 p.m., Monday through Saturday, for a total of approximately 63 hours per week.  (*Id.* ¶¶ 12-17.)  Perez states that he was paid a lump sum cash payment of $550 per week during his time as a driver's assistant, and a cash

payment of $650 per week during his time as a forklift driver.  (*Id.* ¶¶ 19-20.)  He claims that, throughout his employment with Defendant, he was not compensated at one and one-half times his regular rate of pay for the hours he worked in excess of 40 hours per week.  (*Id.* ¶¶ 13, 15, 17.)[2]

### b.   **Maldonado**

According to his Declaration, Maldonado was employed by Defendant as a forklift driver from approximately August 2012 through August 2014.  (*See* Maldonado Decl. ¶ 3.)  He asserts that he generally worked 60 hours per week, from 5:00 a.m. to 3:00 p.m., Monday through Saturday.  (*Id.* ¶¶ 11-12.)  He further asserts that, for his work, he was paid the fixed weekly sum of $560, in cash (*id.* ¶ 12), and was not paid overtime wages for his hours in excess of 40 per week (*see id.* ¶ 11).

### c.   **Soriano**

Soriano states that, from approximately August 2012 through September 2014, he was employed by Defendant as a driver's assistant.  (*See* Soriano Decl. ¶ 3.)  He describes his work hours as having generally been from 66 to 72 hours per week, with shifts beginning at 6:00 a.m. and ending between 5:00 and 6:00 p.m., Monday through Saturday.  (*Id.* ¶¶ 10-11.)  According to his Declaration, Soriano was paid the fixed sum of $400 per week, in cash (*id.* ¶ 13) and did not receive any overtime compensation for his hours in excess of 40 per week (*see id.* ¶ 11).

---

[2] Perez also asserts that he was not paid spread-of-hours pay (*see* Perez Decl. ¶ 13-18), and did not receive wage statements or wage notices (*see id.* ¶¶ 22-25).  Yet, as these facts only relate to Perez's NYLL claims, and as this Court has determined that the Opt-In Plaintiffs may not recover on their state-law claims upon Defendants' default, this Court will not address these alleged facts herein.  For the same reason, this Court will omit references herein to similar facts alleged by the other Opt-In Plaintiffs.

### d.   <u>Tapia</u>

In his submitted Declaration, Tapia states that, from approximately June 2013 through March 2015, he was employed by Defendant as a driver's assistant.  (*See* Tapia Decl. ¶ 3.)  He further states that he generally worked 110 hours per week, Monday through Saturday, with shift from 4:00 a.m. to 6:00 p.m., two shifts from 4:00 a.m. to 1:00 a.m., and three shifts from 4:00 a.m. to 10:00 p.m.   (*Id.* ¶ 10-11.)  Tapia claims that he was given a fixed cash payment of $480 per week for his work (*id.* ¶ 13), and, like the other plaintiffs, he also claims not to have received any overtime pay for his hours in excess of 40 per week (*see id.* ¶ 11).

### e.   <u>Velos</u>

Finally, Velos states in his Declaration that he was employed by Defendant as a driver's assistant from approximately October 2013 through January 2015.  (*See* Velos Decl. ¶ 3.)  Velos asserts that he generally worked 76 to 84 hours per week, Monday through Saturday, with his shifts starting at 4:00 a.m. and ending between 12:00 p.m. and 2:00 p.m. two days per week, and ending between 7:00 p.m. and 8:00 p.m. four days per week.  (*Id.* ¶ 10.)  He states that he was paid the fixed amount of $420 per week, in cash (*id.* ¶ 13) and received no overtime compensation for any hours that he worked in excess of 40 per week (*see id.* ¶ 11).

### B.   <u>Procedural History</u>

As noted above, the Named Plaintiffs commenced this action by filing a Complaint on May 30, 2018.  (*See* Compl.)  The Opt-In Plaintiffs separately filed notices of their consent to join the action on August 16, 2018 (Dkt. 11 (Maldonado)), August 17, 2018 (Dkt. 12 (Perez)), August 20, 2018 (Dkt. 13 (Velos)), August 22, 2018 (Dkt. 14 (Soriano)), and October 29, 2018 (Dkt. 23 (Tapia)).  Each "Consent To Join Form" recited the same language regarding the Opt-In Plaintiffs' intended assertion of claims:

> I consent to be a party plaintiff in a lawsuit against New Day Top
> Trading, Inc., and/or related entities and individuals (collectively
> "New Day Top") in order to seek redress for violations of the Fair
> Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

(Dkts. 11, 12, 13, 14, 23.)

After Defendant failed to respond to the Complaint, Plaintiffs moved for a default

judgment on September 11, 2018 (Dkts. 15-18), and the Honorable Paul A. Engelmayer,

U.S.D.J., set a hearing on Plaintiffs' motion, which was held on November 8, 2018, without any

appearance by Defendant (*see* Dkt. 31).  At the hearing, Judge Engelmayer noted that the motion

for a default judgment had been filed before Tapia filed his opt-in notice, leading the Court to

direct Plaintiffs to file separately for a default judgment on Tapia's behalf (*id.*); counsel

proceeded to do so on November 20, 2018 (*see* Dkts. 35-37).  After a hearing on January 7, 2019

with respect to Tapia, which was again unattended by Defendant (*see* Minute Entry for 1/7/19),

the Court entered default judgment against Defendant as to liability, with respect to all Plaintiffs

(Dkt. 46).  That same day, Judge Engelmayer referred the matter to this Court for an inquest on

damages.  (Dkt. 47.)

On February 27, 2019, this Court issued a Scheduling Order, directing Plaintiffs to file

Proposed Findings of Fact and Conclusions of Law by March 29, 2019.  (Dkt. 49.)  This Court

expressly cautioned Defendant that, if it failed to respond to Plaintiffs' submissions by April 29,

2019, then this Court would proceed to issue a report and recommendation concerning damages

on the basis of Plaintiffs' submissions alone.  (*See id.*)  Plaintiffs timely filed their submissions

(*see* Proposed Findings of Fact and Conclusions of Law, dated Mar. 29, 2019 (Dkt. 52); Brooks

Decl.), and Defendant did not respond.

After reviewing Plaintiff's submissions, however, and finding their proposed damages

calculations to contain discrepancies and to lack transparency (such that this Court was unable to

replicate Plaintiffs' methodology for ascertaining the amounts purportedly owed), this Court

issued a follow-up Order on February 14, 2020, seeking, *inter alia*, clarification regarding certain

of Plaintiffs' damages calculations.  (*See* Dkt. 59.)  In that Order, this Court directed Plaintiffs to

make a supplemental submission by February 28, 2020, and afforded Defendant until March 13,

2020 to file a response.  (*Id*.)  On February 27, 2020, Plaintiffs timely filed supplemental

submissions clarifying their damages calculations and attaching additional supporting materials.

(*See* Plaintiff's Supplemental Proposed Findings of Fact and Conclusions of Law, dated Feb. 27,

2020 (Dkt. 60); Supplemental Declaration of Molly Brooks in Support of Plaintiffs'

Supplemental Proposed Findings of Fact and Conclusions of Law, dated Feb. 27, 2020 ("Supp.

Brooks Decl.") (Dkt. 61).)

      As this Court was then preparing to make a recommendation on damages, it discovered

that, despite the fact that Plaintiffs' counsel had represented to Judge Engelmayer (prior to the

Court's issuance of a default judgment) that "each time [Plaintiffs] filed a document with the

Court [Plaintiffs had] served [D]efendant" (Dkt. 31, at 12), the Docket did not actually reflect

that Plaintiffs had served on Defendant the consent forms filed by the Opt-In Plaintiffs, which

would have provided Defendant with notice of the scope of the Opt-In Plaintiffs' claims.  By

Order dated May 29, 2020, this Court therefore directed Plaintiffs' counsel to file proof of such

service, specifying the dates on which the forms were served.  (Dkt. 65.)  On June 5, 2020,

Plaintiffs' counsel filed a letter with the Court, apologizing for the "incorrect" statement that it

had previously made to the Court regarding its service of all prior filings, and stating that the

Opt-In Plaintiffs' consent forms were not actually served on Defendant until June 2, 2020.

(Dkt. 66.)  Plaintiffs asserted, however, that Defendant nevertheless had adequate notice of the

Opt-In Plaintiffs' claims because Plaintiffs had served Defendant with their papers in support of their motion for default judgment, which discussed those claims.  (*See id*.)

To date, Defendant has filed no response to any of Plaintiffs' submissions.  (*See generally* Dkt.)

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   Inquest Upon a Default Judgment

#### 1.   Establishment of Liability Through Default

Under Rule 55 of the Federal Rules of Civil Procedure, a party defaults when it "has failed to plead or otherwise defend" against a judgment for affirmative relief. Fed. R. Civ. P. 55(a).  There is no question that "default is an admission of all well-pleaded allegations against the defaulting party," *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004), and that "a default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability," *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973).  Thus, as a general matter, a district court must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in its favor.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

The court, however, "need not agree that the alleged facts constitute a valid cause of action," *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981), but is instead "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law," *Finkel*, 577 F.3d at 84; *Taizhou Zhongneng Import and Export Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) (summary order).   In other words, because a defendant's default only establishes its liability based on the *well-pleaded* allegations of the

complaint, the court must still scrutinize the plaintiff's pleading and find the claims sufficiently

pleaded.  *See Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 313 (S.D.N.Y.

2014) (stating that, "since the allegations in the complaint must be 'well-pleaded,' we are

required to examine whether those factual allegations, if deemed true, establish liability" (citing

*Finkel*, 577 F.3d at 84)); *see also Centra Developers Ltd. v. The Jewish Press Inc.*, No. 16-CV-

6737 (WFK) (LB), 2018 WL 1445574, at *1 (E.D.N.Y. Mar. 23, 2018) (finding, despite

defendant's default, that plaintiff was not entitled to recover damages on pleaded claims that

failed as a matter of law); *Greathouse v. JHS Sec. Inc.*, No. 11cv7845 (PAE), 2012 WL 5185591,

at *5 (S.D.N.Y. Oct. 19, 2012) (finding, after a damages inquest upon the defendant's default,

that the plaintiff was not entitled to damages on an inadequately pleaded FLSA retaliation

claim), *vacated and remanded on other grounds*, 784 F.3d 105 (2d Cir. 2015).

### 2.    <u>Necessity For Proof of Damages</u>

Although a "'default judgment entered on well-pleaded allegations in a complaint

establishes a defendant's liability,'" it does not reach the issue of damages.  *Bambu Sales, Inc. v.*

*Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v.*

*Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).  Thus, in

conducting an inquest on default, a court accepts as true all of the factual allegations of the

complaint, *except* those relating to damages, *Au Bon Pain Corp.*, 653 F.2d at 65, and the plaintiff

must substantiate his or her claim with evidence to prove the extent of damages, *see Trehan v.*

*Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to

prove damages suffered and the court will then determine whether the relief flows from the facts

(citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974))).  The burden is on the plaintiff to

"introduce sufficient evidence to establish the amount of damages with reasonable certainty,"

*RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv1369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013) (citations omitted), *report and recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013), although the plaintiff is entitled to all reasonable inferences in its favor based on the evidence submitted, *see U.S. ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL 4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation).

Where a defaulting defendant has not made any submission on a damages inquest, the court must assess whether the plaintiff has provided a sufficient basis for the court to determine damages, *see Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997), and the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs alone, *see, e.g.*, *Garden City Boxing Club, Inc. v. Hernandez*, No. 04cv2081 (LAP) (DF), 2008 WL 4974583, at *4-5 (S.D.N.Y. Nov. 24, 2008) (determining the adequacy of plaintiff's damages claim based solely on its submitted proofs where defendant neither responded to plaintiff's submissions with respect to its claimed damages nor requested a hearing). In its discretion, the court may also hold a hearing to assess the amount of damages that should be awarded on a default. *See* Fed. R. Civ. P. 55(b)(2); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given much discretion to determine whether an inquest need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing"); *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ("[b]y its terms, [Rule] 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court").

### 3.     Limits on Available Damages, Under Rule 54(c)

Regardless of the submitted proofs or testimony, damages awarded upon a defendant's default "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).  This requirement has been interpreted as being necessary to ensure that the defendant has been given adequate notice of the scope of damages it could face, upon its default. *See*, *e.g.*, *Gucci America, Inc. v. Gold Center Jewelry*, 997 F. Supp. 339, 404 (S.D.N.Y. 1998) ("The rationale for the rule, insofar as it applies to default judgments, 'is that default is tantamount to consent to the entry of judgment, but this consent is effective only to the extent that it was duly informed.'" (quoting 10 Moore's Federal Practice § 54.71, at 54-127 (3d ed. 1997))); *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 345 (S.D.N.Y. 2014) (adopting report and recommendation noting that "courts in this jurisdiction have interpreted the Rule 54(c) requirement to turn on defendant's receipt of adequate notice of the scope of damages"); *Capgemini U.S., LLC v. EC Manage, Inc.*, No. 10cv2486 (GBD) (HPD), 2012 WL 5931837, at *6 (S.D.N.Y. Nov. 7, 2012) (finding that, where *ad damnum* clause requested $1,000,000 "plus interest," "the Complaint put the defendants on notice that they could be liable for an amount in excess of $1,000,000 once interest was computed," and therefore interest award would not violate Rule 54(c)), *report and recommendation adopted*, 2012 WL 5938590 (Nov. 27, 2012).

Courts have thus strictly construed the damages provisions of complaints awarding damages on default.  *See*, *e.g.*, *New York City Dist. Council of Carpenters Pension Fund v. Quantum Const.*, No. 06cv13150 (GEL) (JCF), 2008 WL 5159777, at *4, *11 (S.D.N.Y. Dec. 9, 2008) ("damages should be limited to the time period set forth in the [c]omplaint"); *Jowers v. DME Interactive Holdings, Inc.*, No. 00cv4753 (LTS) (KNF), 2006 WL 1408671, at *9

(S.D.N.Y. May 22, 2006) (declining to award statutory liquidated damages where "the complaint did not give notice that [plaintiff] was seeking liquidated damages by making a citation to the applicable provisions of New York's Labor Law"); *Marina B Creation S.A. v. de Maurier*, 685 F. Supp. 910, 912-13 (S.D.N.Y. 1988) (declining to award treble damages requested in memorandum of law where such damages were not specified in either complaint or notice of motion for default).

### B. Extent to Which FLSA Opt-In Notices May Provide Notice to a Defendant That the Opt-In Plaintiffs Are Seeking Damages Outside the FLSA

In an action brought under the FLSA, employees who are found to have been similarly situated to named plaintiffs may opt into an FLSA "collective," so as to assert their own FLSA claims against the named defendant. 29 U.S.C. § 216(b). Further, a few courts have suggested that the language of the FLSA appears to contemplate that, when a plaintiff opts into an FLSA collective, he or she may (depending on what he or she states in the consent form), opt into the action in its entirety, such that he or she may also then proceed to assert related state-law claims as well. *See, e.g., Hicks v. T.L. Cannon Corp.,* 35 F. Supp. 3d 329, 337-39 (W.D.N.Y. 2014).

Even outside the default context, however, a defendant in a wage-and-hour case must still be given fair notice of the claims being asserted against it, and, for this reason, some courts in this Circuit have reasoned that a defendant may not be held liable to opt-in plaintiffs for NYLL violations, where these plaintiffs' filed consent forms, indicating their intention to join the action, cannot fairly be read to state an intention to claim state-law violations, in addition to FLSA claims. *See, e.g.*, *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 294 n.8 (S.D.N.Y. 2019) ("In determining the scope of recovery permitted by opt-in plaintiffs, courts have considered the language of the consent forms used."); *Saleem v. Corp. Transp. Grp., Ltd.,* No. 12cv8450 (JMF),

2014 WL 7106442, at *1 (S.D.N.Y. Dec. 9, 2014) (where language of consent form stated that opt-in consented to join case "in order to seek redress from violation of the Fair Labor Standards Act," the court had "no basis to conclude that the [o]pt-[i]n [p]laintiffs joined the named [p]laintiffs in bringing claims under the NYLL"); *cf. Ramirez-Marin v. JD Classic Builders Corp.,* No. 16cv5584 (DLI) (RER), 2017 WL 4358759, at *4 (E.D.N.Y. Sept. 30, 2017) (finding opt-in plaintiffs entitled to pursue relief under NYLL, where consent form reflected that plaintiffs consented to join lawsuit "brought pursuant to the Fair Labor Standards Act, the New York Labor Law, and the New York Code of Rules and Regulations").

### C.   Burden of Proof in Wage Cases, Where Defendants' Records Are Inadequate or Have Not Been Produced

In an FLSA case, the burden falls on the plaintiff-employee to demonstrate "'that he performed work for which he was not properly compensated.'"  *Santillan v. Henao*, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251, *et seq.*).  As noted by the Supreme Court, however, employees "'seldom keep . . . records [of hours worked] themselves,'" *id.* at 294 (alteration in original) (quoting *Anderson*, 328 U.S. at 687), and, "'even if they do, the records may be and frequently are untrustworthy,'" *id.* (quoting *Anderson*, 328 U.S. at 687).  Employers, on the other hand, have a duty to maintain such records pursuant to Section 11(c) of the FLSA, and, thus, the "easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secur[e] the production of such records' from the employer."  *Id.* (alteration in original) (quoting *Anderson*, 328 U.S. at 687).

A defaulting defendant "deprive[s] the plaintiff of the necessary employee records required by the FLSA, thus hampering [the] plaintiff's ability to prove his damages."  *Id.*  As a result, where a defendant defaults, a plaintiff may meet his burden of proof "by relying on

recollection alone" to establish that he "performed work for which he was improperly compensated." *Id.* at 293-94 (citing cases and finding, in default context, that plaintiff provided a "sufficient basis for [the] determination of damages" where he "submitted a sworn declaration containing information as to hours worked and rates of pay based on estimation and recollection," even where the plaintiff's submission was "general and not detailed" (internal quotation marks and citations omitted)). "Moreover, in the absence of rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Id.* (internal quotation marks and citations omitted); *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) (holding that where an employer fails to produce evidence regarding the amount of work that the employee performed or evidence to negate "the reasonableness of the inference to be drawn from the employee's evidence," the court may "award damages to the employee, even though the result be only approximate" (quoting *Anderson*, 328 U.S. at 687-88)).

Under New York law, courts actually "go[] one step further and require[] that employers who fail to maintain the appropriate records 'bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Santillan*, 822 F. Supp. 2d at 294 (quoting N.Y. Lab. Law § 196-a).

### D.   FLSA and NYLL Statutes of Limitations

Under the FLSA, the applicable statute of limitations is generally two years, except that, where the employer is found to have committed a "willful" violation of the law, the limitations period is extended to three years. 29 U.S.C. § 255(a). Willfulness under the FLSA is found where an employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S.

128, 133 (1988). "[A] defendant's default, in itself, may suffice to support a finding of wil[l]fulness." *Santillan*, 822 F. Supp. 2d at 297. The applicable limitations period for NYLL claims is six years. N.Y. Lab. Law § 663(3).

The statute of limitations provides an affirmative defense, which is waived by the defendant upon its default. *United States Sec. & Exch. Comm'n v. Boock,* 750 F. App'x 61, 62 (2d Cir. 2019); *Melgadejo v. S & D Fruits & Vegetables Inc.,* No. 12cv6852 (RA) (HBP), 2015 WL 10353140, at *8 (S.D.N.Y. Oct. 23, 2015), *report and recommendation adopted,* 2016 WL 554843 (S.D.N.Y. Feb. 9, 2016); *Guallpa v. N.Y. Pro Signs Inc.,* No. 11cv3133 (LGS) (FM), 2014 WL 2200393, at *2 n.2 (S.D.N.Y. May 27, 2014), *report and recommendation adopted,* 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014). In the FLSA context, it has been held that, where, upon a defendant's default, a plaintiff seeks damages that would otherwise be time-barred under the statute, the plaintiff may recover for a period going back farther than three years prior to the filing of the complaint, but the plaintiff's recovery should still be limited to a three-year period. *See Guallpa,* 2014 WL 2200393, at *2 n.2 ("Courts in this Circuit [] generally have limited a plaintiff's recovery in the event of a defendant's default to the time period covered by the FLSA statute of limitations.").

### E.   Damages Available Under the FLSA and and the NYLL for Overtime Pay Violations

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum wage for the first 40 hours that he or she worked in a given work week. 29 U.S.C. § 206(a). Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, hours exceeding 40 per week), at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." *Id.* § 207(a)(1). Commencing on July 24, 2009, the federal minimum wage was $7.25 per hour. *See* 29 U.S.C. § 206(a)(1)(C).

The NYLL, like the FLSA, mandates payment at, at least, a statutory minimum wage rate, as well as one and one-half times the regular normal rate of pay for each hour worked by an employee in excess of 40 hours per week.  12 N.Y.C.R.R. § 146-1.4.  For the periods relevant to this action, the statutory minimum wage in New York State was the following:  as of January 1, 2007, $7.25 per hour; as of December 31, 2013, $8.00 per hour; as of December 31, 2014, $8.75 per hour; as of December 31, 2015, $9.00 per hour; as of December 31, 2016, in New York City, for employers of 11 or more employees, $11.00 per hour.  N.Y. Lab. Law § 652(1).

Where an employee earns a fixed salary, "the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate."  29 C.F.R. § 778.113(a).  Courts have recognized that, under the FLSA, there is a "rebuttable presumption that a weekly salary covers only the first [40] hours, unless the parties have an alternate agreement."  *Pinovi v. FDD Enterps., Inc.*, No. 13cv2800 (GBD) (KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015); *see also Giles v. City of New York*, 41 F. Supp. 2d 308, 316-17 (S.D.N.Y. 1999) ("The fact that an employee regularly works 60 or more hours does not, without more, indicate that the employee's weekly salary was intended to include the FLSA overtime premium for all hours in excess of 40.").  Courts in this District have extended this rebuttable presumption to apply under the NYLL, as well as the FLSA.  *See, e.g.*, *Pinovi*, 2015 WL 4126872, at *4; *Pastor v. Alice Cleaners, Inc.*, No. 16cv7264 (JLC), 2017 WL 5625556, at *2 (S.D.N.Y. Nov. 21, 2017); *Amaya v. Superior Tile & Granite Corp.*, No. 10cv4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012).  "[T]he employer can rebut the presumption by showing an employer-employee agreement that the salary covers a different number of hours."  *Giles*, 41 F. Supp. 2d at 317.  Absent evidence that the employer and employee understood that the fixed weekly salary included overtime

hours, a court will find that the weekly salary covered only the first 40 hours. *See Pastor*, 2017 WL 5625556, at \*2-3; *Pinovi*, 2015 WL 4126872, at \*4-5; *Amaya*, 2012 WL 130425, at \*9; *cf. Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335, 338 (S.D.N.Y. 2005) (finding that the FLSA's rebuttable presumption had been overcome where the plaintiff conceded that his salary covered 50 hours of work).

Although a plaintiff may be "entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the [NYLL], [he or she] may not recover twice." *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08cv3725 (DC), 2010 WL 4159391, at \*3 (S.D.N.Y. Sept. 30, 2010). Instead, "[w]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Wicaksono v. XYZ 48 Corp.*, No. 10cv3635 (LAK) (JCF), 2011 WL 2022644, at \*3 (S.D.N.Y. May 2, 2011) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2011 WL 2038973 (May 24, 2011). Accordingly, when calculating minimum-wage damages, the higher of either the federal or the New York minimum wage should be used for any period covered by both statutes. *Id.*

## F.  <u>Spread-of-Hours Pay Pursuant to the NYLL</u>

Under the NYLL (but not the FLSA), in addition to receiving damages for unpaid regular wages and overtime, an employee earning the minimum wage is entitled to receive "spread-of-hours" pay, which is "one hour's pay at the basic minimum hourly wage rate" for any workday that lasts longer than 10 hours. 12 N.Y.C.R.R. § 142-2.4(a); *see also* N.Y. Lab. Law §§ 650, *et seq.* "Spread-of-hours compensation is calculated by multiplying the minimum wage by the number of days an employee worked more than [10] hours." *See* 12 N.Y.C.R.R. § 146-1.6. Entitlement to spread-of-hours pay does not extend to employees whose regular rate is above the

statutory minimum wage.  *Mei Chun Poon v. Apple NYC Corp.,* No. 17cv9647 (RA) (GWG),

2019 WL 75674, at *7 (S.D.N.Y. Jan. 2, 2019); *Baltierra v. Advantage Pest Control Co.,* No.

14cv5917 (AJP), 2015 WL 5474093, at *6 (S.D.N.Y. Sept. 18, 2015).

### G.      Liquidated Damages Pursuant to the FLSA and the NYLL

In addition to allowing recovery for unpaid minimum wages and overtime compensation,

the FLSA provides for the recovery of liquidated damages.  *See* 29 U.S.C. § 216(b).  Under the

statute, a plaintiff is entitled to recover liquidated damages in an amount equal to the amount of

unpaid wages and overtime compensation that the plaintiff was improperly denied, unless the

employer demonstrates that it acted in good faith and had a reasonable basis for believing that it

had not violated the FLSA.  *See id.* (providing that plaintiff-employees who prevail under either

Section 206 or 207 of the FLSA are entitled to recover "the amount of their unpaid minimum

wages, or their unpaid overtime compensation, as the case may be, and . . . an additional equal

amount as liquidated damages"); *see also* 29 U.S.C. § 260 (mandating that an employer pay

liquidated damages unless the employer demonstrates that he was acting in "good faith" and

"had reasonable grounds for believing" that he was not acting in violation of the FLSA);

*Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)

(adopting report and recommendation).

"As the Second Circuit has observed, 'the employer bears the burden of establishing, by

plain and substantial evidence, subjective good faith and objective reasonableness. . . .  The

burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the

norm, single damages the exception.'"  *See Galeana*, 120 F. Supp. 3d at 317 (quoting *Reich*, 121

F.3d at 71 (other internal quotation marks and citations omitted)); *Cao*, 2010 WL 4159391, at *5;

*Yu G. Ke*, 595 F. Supp. 2d at 261; *see also* 29 U.S.C. § 260.

The NYLL also provides for the recovery of liquidated damages, *see* N.Y. Lab. Law § 663(1), and while, prior to April 9, 2011, liquidated damages were awarded at the rate of 25 percent of the unpaid wages, an amendment to the NYLL, effective as of that date, increased the award to a rate of 100 percent of unpaid wages. *Wimbush v. L.I.C. Pet Transp. Inc.*, No. 16cv5363 (PAE) (KNF), 2018 WL 3388296, at *4 (S.D.N.Y. July 12, 2018). Employees who make out a claim for retaliatory termination are also entitled to liquidated damages on any back pay they are owed. *Tackie v. Keff Enterps. LLC*, No. 14cv2074 (JPO), 2014 WL 4626229, at *5 (S.D.N.Y. Sept. 16, 2014). Although courts within this Circuit were previously split on the question of whether a plaintiff could recover liquidated damages under both the FLSA and the NYLL, *see Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016) (summary order), the Second Circuit has since clarified that double recovery is not permitted, *id.*; *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (interpreting the NYLL and FLSA as "not allowing duplicative liquidated damages for the same course of conduct," and holding that "plaintiff should receive the larger of the two liquidated damages awards").

### H.   New York State Wage Notice Requirements

#### 1.   Wage Statements

Pursuant to New York's Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL that was made effective as of April 9, 2011, employers are required to

> 'furnish each employee with a statement with every payment of wages, listing the following' information:  (1) the dates of work covered by that payment of wages; (2) the employee's name; (3) the employer's name, address, and telephone number; (4) the rate or rates of pay and basis thereof; (5) gross wages; (6) deductions; (7) allowances, if any, claimed as part of the minimum wage; and (8) net wages.

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 475 (S.D.N.Y. 2015) (quoting N.Y. Lab. Law § 195(3)); *see also Baltierra v. Advantage Pest Control Co.*, No. 14cv5917 (AJP), 2015 WL 5474093, at *10-11 (S.D.N.Y. Sept. 18, 2015).

For employer wage-statement violations occurring before February 27, 2015, "the WTPA entitled employees to recover statutory damages of $100 per work week, not to exceed $2,500." *Baltierra,* 2015 WL 5474093, at *10. For employer wage-statement violations occurring after February 27, 2015, the WTPA entitles employees to recover statutory damages of "[$250.00] for each work day that the violations occurred . . . [,] but not to exceed a total of [$5,000.00]." N.Y. Lab. Law § 198(1-d).

Liquidated damages are not available to augment the statutory damages that may be awarded under the WTPA for wage-statement violations. *Java v. El Aguila Bar Restaurant Corp.*, No. 16cv6691 (JLC), 2018 WL 1953186, at *13 n.18 (S.D.N.Y. Apr. 25, 2018).

## 2.    <u>Wage Notices</u>

In addition, the WTPA requires employers to provide a written wage notice "at the time of hiring." N.Y. Lab. Law § 195(1)(a). The wage notice is required to be "in English and in the language identified by each employee as the primary language of such employee," *id.*, and must contain the following information:

> (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any 'doing business as' names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

*Salinas*, 123 F. Supp. 3d at 474 (footnote omitted) (quoting N.Y. Lab. Law § 195(1)(a)).

For employer violations of this requirement occurring after February 27, 2015, the WTPA entitles employees to recover statutory damages of "[$50.00] for each work day that the violations occurred . . . [,] but not to exceed a total of [$5,000.00]."  N.Y. Lab. Law § 198(1-b).

As with wage-statement violations, liquidated damages may not be awarded with respect to wage-notice violations under the WTPA.  *Java*, 2018 WL 1953186, at *13 n.18.

## I.    Prejudgment Interest

Generally, "[t]he decision to award prejudgment interest is discretionary, and is based on the need to fully compensate the wronged party, [the] fairness of the award, and the remedial purpose of the statute involved."  *Najnin v. Dollar Mountain, Inc.*, No. 14cv5758, 2015 WL 6125436, at *3 (S.D.N.Y. Sept. 25, 2015).  Given that FLSA liquidated damages serve a compensatory, rather than punitive, purpose, "there is no need to employ pre-judgment interest to restore Plaintiffs to a position they would have otherwise enjoyed absent the wage-protection violation."  *Cabrera v. 1560 Chirp Corp.*, No. 15cv8194 (TPG) (DF), 2017 WL 1289349, at *8 (S.D.N.Y. Mar. 6, 2017) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 1314123 (Apr. 6, 2017).  Thus, a plaintiff who recovers liquidated damages under the FLSA is not also entitled to prejudgment interest on his or her FLSA damages.  *See, e.g.*, *id.*; *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) ("'It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages.'" (quoting *Begum v. Ariba Disc., Inc.*, No. 12cv6620 (DLC) (KNF), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015))).  As a result, "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA."  *Andrade v. 168 First Ave Restaurant*

*Ltd.*, No. 14cv8268 (JPO) (AJP), 2016 WL 3141567, at *9 n.7 (S.D.N.Y. June 3, 2016), *report and recommendation adopted*, 2016 WL 3948101 (July 19, 2016).

Based on a provision added to the NYLL in 2011, however, a plaintiff who recovers liquidated damages under the NYLL is also entitled to prejudgment interest. *See Hernandez v. Jrpac Inc.*, No. 14cv4176 (PAE), 2016 WL 3248493, at *35 (S.D.N.Y. June 9, 2016) (noting that, under the NYLL, a plaintiff may receive both an "award of prejudgment interest alongside a liquidated damages award" (citing N.Y. Lab. Law § 198(1-a))); *see also Castillo v. RV Transp., Inc.*, No. 15cv0527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016). Under the state law, though, "[p]rejudgment interest is calculated . . . [only] on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. East Manor USA Inc.*, No. 10cv4313 (NG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (citation omitted), *report and recommendation adopted*, 2013 WL 2152176 (May 17, 2013).

"Pursuant to [New York] state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." *Najnin*, 2015 WL 6125436, at *4; *see also* N.Y.C.P.L.R. §§ 5001, 5004. As to the date from which interest should be found to run, "Section 5001(b) sets forth two methods of calculating prejudgment interest[]":

> First, interest may be calculated from 'the earliest ascertainable date the cause of action existed,' N.Y. C.P.L.R. § 5001(b). However, '[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.' *Id.*

*Alvarez v. 215 N. Ave. Corp.*, No. 13cv0049 (NSR) (PED), 2015 WL 3855285, at *3 (S.D.N.Y. June 19, 2015) (adopting report and recommendation). It is within the court's "'wide discretion'" to "'determin[e] a reasonable date from which to award prejudgment interest.'" *Id.* (quoting *Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir. 1994)).

25

J.      **Attorneys' Fees and Costs**

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover [his or] her reasonable attorney's fees and costs." *Najnin*, 2015 WL 6125436, at *4; *see* 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).  The court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award.  *See Barfield v. New York City Health & Hosp. Corp.*, 537 F.3d 132, 151-52 (2d Cir. 2008).  As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates a "'presumptively reasonable fee'" (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008))).  The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and must provide the court with sufficient information to assess the fee application, *see New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

For purposes of the lodestar, an attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.  Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought, *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987); *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450

26

F.3d 91, 96-7 (2d Cir. 2006).  Paralegal services are includable in an award of attorneys' fees, and the reasonableness of paralegal fees are also determined by reference to the prevailing hourly rate in the relevant community.  *See Marisol A.  ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 415-16 (2d Cir. 1989)).

In *Arbor Hill*, the Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190.  In assessing whether an hourly rate is reasonable, the court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.*  When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the court's discretion to reduce the requested rate.  *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

As for the time component of the lodestar, an attorney's stated number of hours should be reduced by the court where it is greater than required to litigate the case effectively, *see Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (holding that time component should not reflect excessive hours), or where the attorney's proffered time records are vague or otherwise inadequate to enable the court to determine the reasonableness of the work performed or the time expended, *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10cv05256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (finding that vague time records were insufficient to substantiate claimed expenditures of time; collecting cases).  In determining whether an excessive amount of time was expended on the matter, the court may also consider, *inter alia*, the nature and quality of the work submitted by counsel in connection

27

with the litigation, *see Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), and whether the work was complicated or straightforward, *see Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13cv3061 (JGK), 2014 WL 2624759, at *6 (S.D.N.Y. June 10, 2014) (considering "the straightforward nature of the work performed [and] the relative simplicity of the issues involved" (internal quotation marks and citations omitted)).

As the party seeking attorneys' fees bears the burden of demonstrating that its claimed fees are reasonable, *Thai-Lao Lignite (Thailand)*, 2012 WL 5816878, at *3 (citations omitted), it must submit, in support of its request for fees, contemporaneous time records that "specify, for each [timekeeper], the date, the hours expended, and the nature of the work done," *id.* (quoting *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)) (internal quotation marks omitted).  Where an attorney's time records are inadequate to enable the court to determine whether the time expended was reasonable, a percentage reduction may be applied as a "practical means of trimming fat" from a fee application.  *N.Y. State Ass'n for Retarded Children*, 711 F.2d at 1146.

In addition to the lodestar amount, attorneys' fees may include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted).  These expenses, or "costs," may include photocopying, travel, telephone costs, and postage, *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987), as well as filing fees and reasonable process-server fees, *Rosendo v. Everbrighten Inc.*, No. 13cv7256 (JGK) (FM), 2015 WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL 4557147 (July 28, 2015).

## II.     PLAINTIFFS' DAMAGES CLAIMS

### A.     Damages Recoverable by the Named Plaintiffs

As a preliminary matter, this Court finds that the Complaint contains well-pleaded allegations regarding Defendant's claimed failure to pay the Named Plaintiffs, sufficient to establish Defendant's liability to these plaintiffs, both on their FLSA and NYLL claims.  *See Finkel*, 577 F.3d at 84.  This Court also finds that that the submissions made by the Named Plaintiffs in connection with this inquest, as supplemented in response to this Court's February 2020 Order, are sufficient to meet their burden of establishing, to a reasonable certainty, their applicable overtime, spread-of-hours, and statutory damages, such that a hearing as to their damages is not required.  *See Fustok*, 873 F.2d at 40 (noting that the district court has the discretion to determine whether a hearing is necessary).

Further, as noted above, where a defaulting defendant in a wage-and-hour case has neither provided any employment records, nor otherwise rebutted the plaintiff's damages claims, it is sufficient for a plaintiff to rely on his "recollection alone" to establish the hours he worked and the rates he should have been paid.  *Santillan*, 822 F. Supp. 2d at 294 (internal quotation marks and citations omitted).  In this case, Defendant has not appeared to defend this case, and has submitted no employment records to rebut the Named Plaintiffs' claims.  In these circumstances, this Court accepts as true the well-pleaded factual allegations presented in the Complaint and in the Named Plaintiffs' signed Declarations (to the extent the latter do not describe claims that exceed that which is pleaded in the Complaint).  These submissions adequately set out the Named Plaintiffs' recollections regarding the hours they worked and the rates of pay they earned for that work, so as to allow for a reasonable assessment of damages.

As to the specific amounts that should be awarded to each of the two Named Plaintiffs, this Court reviews the submitted evidence and calculations for each, in turn:

### 1.   Damages That Should Be Awarded to Alonso

#### a.   Unpaid Overtime Compensation

As set out above, Alonso alleges that, throughout his employment with Defendant, he was paid a fixed weekly salary of $600.  (Alonso Decl. ¶ 13.)  This Court takes that allegation as true, as well as the alleged fact, as set out in Alonso's Declaration, that he generally worked 63 hours per week.  (*Id.* ¶ 10.)[3]  Thus, this Court concludes that, after the first 40 hours, Alonso worked 23 hours of overtime per week throughout his employment with Defendant.

Given the absence of any evidence of an agreement between the parties that Alonso's weekly salary would cover the full hours that he worked each week, this Court presumes that Alonso's weekly salary covered only the first 40 hours of his work, *see Pastor*, 2017 WL 5625556, at *2-3; *Pinovi*, 2015 WL 4126872, at *4-5; *Amaya*, 2012 WL 130425, at *9, which yields a base hourly rate of $15.00.  As this base hourly rate was, for all relevant periods, higher than the applicable federal and state minimum wage rates (*see* Discussion, *supra*, at Section (I)(E)), Alonso was entitled to overtime pay (*i.e.*, one and one-half times the base rate pursuant to the NYLL, *see* 12 N.Y.C.R.R. § 142-2.2) at an hourly rate of $22.50 for 23 hours of overtime that he worked per week.

Plaintiffs' damages chart lists Alonso's start date as January 6, 2014, and his end date as November 26, 2016.  (Supp. Brooks Decl., Ex. L.)  In their calculations, however, which they have explained in their supplemental submissions, Plaintiffs assume that Alonso worked a total

---

[3] As previously noted, this number of hours is slightly less than that pleaded in the Complaint (see Compl. ¶ 9), and using the lower figure raises no issues under Rule 54(c).

of 50 weeks per year, rather than 52.  (Dkt. 60.)  Taking this into account by reducing, *pro rata*, the number of weeks he worked each year during the period at issue, Plaintiffs reasonably estimate that Alonso worked a total of approximately 144.92 weeks,[4] all without compensated overtime.  Using this figure, which has now been adequately explained, yields an underpayment of **$74,994.85** in overtime wages (calculated as $22.50/hour x 23 hours/week x ~144.92 weeks), to which Alonso would be entitled.

### b.  <u>Spread-of-Hours Compensation</u>

Alonso also seeks spread-of-hours compensation, based on his assertion that he worked 11 hours per day at least three days per week throughout his employment with Defendant. (Alonso Decl. ¶ 10.)  As Alonso's regular rate of pay was above the minimum wage at all relevant periods, however, he is not entitled to spread-of-hours damages.  *Mei Chun Poon,* 2019 WL 75674, at *7; *Baltierra,* 2015 WL 5474093, at *6.

### c.  <u>Liquidated Damages</u>

As discussed above, both the FLSA and the NYLL provide for the recovery of liquidated damages on unpaid overtime wages.  Indeed, both statutes mandate that the Court award such liquidated damages to a prevailing plaintiff, unless the defendant employer demonstrates that it acted in good faith or had a reasonable basis to believe that it was acting in compliance with the law.  (*See* Discussion, *supra*, at Section (I)(F).)  Here, given Defendant's default, it has not met its burden of proving that it acted in good faith, *see Galeana*, 120 F. Supp. 3d at 317, and thus

---

[4] For brevity's sake, this Court is referring to rounded decimals in the text of this Report and Recommendation, rather than the complex decimals reached by Plaintiffs in calculating Plaintiffs' work weeks, as reflected in Exhibit L.  In calculating the final amount of damages that should be awarded, however, this Court has used the complex decimals, resulting in total recommended awards that will differ slightly from the amounts that calculations based on the rounded figures would yield.

31

liquidated damages are available under the provisions of both statutes, 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).

Plaintiffs specifically seek liquidated damages under the NYLL (*see* Pl. Mem., at 27), as, given the longer statute of limitations, this would result in a higher liquidated-damages award than if the FLSA were applied, *see Morales v. Mw Bronx, Inc.*, No. 15cv6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). As Plaintiffs are entitled to recover under whichever statute would yield the greatest recovery, *see, e.g.*, *Wicaksono*, 2011 WL 2022644, at *3, I recommend that liquidated damages be awarded, as requested, under the NYLL.

As, under the NYLL, Alonso is entitled to liquidated damages in the amount of 100 percent of his unpaid wages, he is due an additional **$74,994.85,** and I recommend that Alonso be awarded that amount.

### d.   Statutory Damages for Wage Statement and Wage Notice Violations

Alonso is also entitled to recover for wage-statement and wage-notice violations under the New York WTPA. For purposes of this inquest, this Court accepts as true Alonso's contention that he did not receive any wage statements between February 27, 2015 and November 26, 2016. (Alonso Decl. ¶¶ 15-16.) As he is entitled to recover $250 for each work day during that period for which Defendant failed to provide him with proper wage statements, capped at $5,000, *see* N.Y. Lab. Law § 198(1-d), and as that period included more than 20 work days, he is entitled to the maximum of $5,000.00 in statutory damages for wage-statement violations.

This Court similarly accepts Alonso's contention that he never received wage notices. (*Id.* ¶ 17.) Alonso is therefore entitled to recover additional statutory damages, for this violation, in the amount of $50.00 per work week, not to exceed $2,500.00. As Alonso worked more than

50 work weeks prior to February 27, 2015, he is entitled to the full amount of available statutory damages in the amount of $2,500.00.

I therefore recommend that Alonso be awarded **$7,500.00** in statutory damages under the WTPA for Defendant's failure to provide him with required wage statements and wage notices.

### e.      Prejudgment Interest

As noted above, the NYLL provides that a plaintiff may recover both liquidated damages and prejudgment interest on his or her underlying damages.  *See Hernandez*, 2016 WL 3248493, at *35; *Castillo*, 2016 WL 1417848, at *3.  While "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA," *Andrade*, 2016 WL 3141567, at *9 n.7, where, as here, a plaintiff is entitled to recover liquidated damages pursuant to the NYLL, the plaintiff is "eligible for an award of prejudgment interest on the full . . . damages arising out of his . . . wage claims," *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14cv10234 (JGK) (JLC), 2016 WL 4704917, at *18 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 6879258 (Nov. 21, 2016).  As set out above, prejudgment interest on damages under the NYLL is awarded at a rate of nine percent per annum, *Najnin*, 2015 WL 6125436, at *4; N.Y.C.P.L.R. § 5004, and such interest may be calculated from either the "earliest ascertainable date the cause of action existed" or "from a single reasonable intermediate date," where damages were incurred at various times, N.Y.C.P.L.R. § 5001(b).

Alonso is entitled to prejudgment interest on his damages of $74,994.85 for unpaid overtime and spread-of-hours pay, for the period up to his initial inquest submissions.  This Court calculates his prejudgment interest from the midpoint date of his employment (June 17, 2015), to the date of Plaintiff's initial damages submissions (March 29, 2019).  Applying the

prejudgment interest rate of nine percent per annum to this principal amount yields prejudgment

interest in the amount of **$25,537.29** ($74,994.85 x .09 x (1,381/365)).  I therefore recommend

that Alonso be awarded that amount in prejudgment interest on damages arising out of his wage

claims, up to the date of Plaintiffs' initial damages submissions, with additional interest to be

calculated by the Clerk of Court, at a rate of nine percent per annum, from March 29, 2019

through the date of final judgment.[5]

### 2. Damages That Should Be Awarded to Flores

#### a. Unpaid Overtime Compensation

Flores pleaded in the Complaint that he worked more than 40 hours per week for

Defendant, and was never paid overtime wages (Compl. ¶¶ 14, 16, 54), and, through his

Declaration, he has now supplied evidence that, throughout his employment with Defendant, he

was paid a fixed weekly salary of $640 (Flores Decl. ¶ 13).  While this Court may accept that

evidence in connection with this damages inquest, it cannot take as true Flores's current

contention that he generally worked between 87.75 and 96.75 hours per week (*id.* ¶ 11), as using

that estimate would result in damages that would be markedly higher than those reasonably

derivable from the allegations pleaded in the Complaint, where, as noted, Flores pleaded that he

worked 75 to 85 hours per week" (Compl. ¶ 16).  Given the principle that the *well-pleaded*

*allegations of the complaint* must be accepted as true upon a defendant's default, and the strict

requirements of Rule 54(c) that prohibit an award of default damages that differ in amount from

---

[5] Although Plaintiffs did not include revised calculations of prejudgment interest in their
revised damages submissions, the Court notes that their initial submissions calculated
prejudgment interest on Plaintiffs' unpaid wages, spread-of-hours wages, and liquidated
damages.  (Brooks Decl., Ex. K.)  As Plaintiffs are not entitled to either spread-of-hours pay or
prejudgment interest on their liquidated damages, *Mejia,* 2013 WL 3023505, at *8 n.11, this
Court has not included those amounts in its calculation here.

what has been pleaded, this Court concludes that, for purposes of this inquest, it should accept as true the pleaded allegation that Flores worked from 75 to 85 hours per week.  Thus, this Court will assume that Flores worked an average of 80 hours per week, resulting in 40 hours of overtime per week.

As with Alonso, there is no suggestion in the record that the parties had an agreement that Flores's weekly salary would cover the full hours that he worked each week, and this Court therefore presumes that Flores's weekly salary covered only the first 40 hours of his work, *see, e.g.*, *Pastor*, 2017 WL 5625556, at *2-3, which yields a base hourly rate of $16.00.  As this base hourly rate was, for all relevant periods, higher than the applicable federal and state minimum wage rates (*see* Discussion, *supra*, at Section (I)(E)), Flores was entitled to overtime pay at the rate of $24.00 per hour (*i.e.*, one and one-half times his regular rate of pay) for the hours he worked in excess of 40 per week.  *See* 12 N.Y.C.R.R. § 142-2.2.

Plaintiff's damages chart lists Flores's start date as June 2, 2014, and his end date as July 31, 2015, resulting in approximately 58.24 work weeks (after taking into account that Flores, like Alonso, only claims to have worked 50 weeks per year).  (*See* Supp. Brooks Decl., Ex. L.)  Calculating Flores's unpaid overtime by reference to the reasonably estimated period of approximately 58.24 weeks results in his being entitled to **$55,912.09** (calculated as $24.00/hour x 40 hours/week x ~58.24 weeks), and I recommend that Flores be awarded this sum.

### b.     Spread-of-Hours Compensation

Like Alonso, Flores asserts that he is entitled to spread-of-hours pay based on his assertion that he worked over 10 hours per day, six days per week, throughout his employment with Defendant.  (Flores Decl. ¶ 10.)  As Flores's regular rate of pay was above minimum wage

at all relevant periods, however, he is not entitled to spread-of-hours damages.  *Mei Chun Poon,*

2019 WL 75674, at *7; *Baltierra,* 2015 WL 5474093, at *6.

### c.  Liquidated Damages

For the same reasons that Alonso is entitled to recover liquidated damages under the

NYLL, in the full amount of his compensatory damages, so too is Flores, and I specifically

recommend that Flores be awarded an additional **$55,912.09** in liquidated damages (*i.e.*,

100 percent of his unpaid overtime wages).

### d.  Statutory Damages for Wage
### Statement and Wage Notice Violations

Flores is also entitled to recover for wage-statement and wage-notice violations under the

New York WTPA, based on his allegations – which must be accepted as true – that he did not

receive any wage statements between February 27, 2015 and July 31, 2015.  (Flores Decl.

¶¶ 15-16.)  As he is entitled to recover $250 for each work day during that period for which

Defendant failed to provide him with proper wage statements, capped at $5,000, *see* N.Y. Lab.

Law § 198(1-d), and as that period included more than 20 work days, he is entitled to the

maximum of $5,000.00 in statutory damages for wage-statement violations.

This Court similarly accepts Flores's contention that he never received wage notices (*id.*

¶ 17), and concludes that he is therefore entitled to recover additional statutory damages in the

amount of $50.00 per work week, not to exceed $2,500.00.  As Flores worked approximately 38

work weeks prior to February 27, 2015, he is entitled to statutory damages in the amount of

$1,900.00.

I therefore recommend that Flores be awarded **$6,900.00** in statutory damages under the

WTPA for Defendant's failure to provide him with required wage statements and wage notices.

### e. **Prejudgment Interest**

Again, like Alonso, Flores is entitled, under the NYLL, to recover prejudgment interest on his unpaid wages, and this Court finds that he is specifically entitled to prejudgment interest on his unpaid overtime pay of $55,912.09, for the period up to the date when Plaintiffs made their initial inquest submissions.

This Court calculates this prejudgment interest from December 30, 2014 (the midpoint date of his employment) to March 29, 2019, when Plaintiffs' initial calculations were submitted. Applying the prejudgment interest rate of nine percent per annum to this principal amount yields prejudgment interest in the amount of **$21,369.14** ($55,912.09 x .09 x (1,550/365)).  I therefore recommend that Flores be awarded that amount in prejudgment interest on damages arising out of his wage claims, up to the date of Plaintiffs' damages submissions, with additional interest to be calculated by the Clerk of Court, at a rate of nine percent per annum, from March 29, 2019 through the date of final judgment.

### B. **Damages Recoverable by the Opt-In Plaintiffs**

#### 1. **As Plaintiffs Failed To Serve Defendant With the Opt-In Plaintiffs' Consent-To-Join Forms Prior to the Court's Entry of the Default Judgment, that Judgment Should Be Vacated to the Extent It Applies to the Opt-In Plaintiffs' Claims.**

As noted above, where a plaintiff seeks to join a wage-and-hour case by way of the opt-in procedure set out in Section 216(b) of the FLSA, the scope of that plaintiff's potential recovery has been held to be governed by the scope of the language contained in the plaintiff's notice of his or her consent to join the action.  *See, e.g.*, *Williams,* 358 F. Supp. 3d at 294 n.8.  By logical extension of this reasoning, before a defendant may be held in default for failing to defend against an opt-in plaintiff's claims, there should be proof that the consent form has been served on the defendant.

Here, the Court issued its default judgment in favor of all Plaintiffs only after having received an assurance by Plaintiffs' counsel that all the filings that Plaintiffs had made in the case, regarding all of the Opt-In Plaintiffs, had, in fact, been served on Defendant.  (*See* Dkt. 31, at 12 (Plaintiff's counsel stating, after being asked by the Court whether there had been service on Defendant as to the last plaintiff who sought to opt in to the action:  "Yes, Your Honor.  We have served [D]efendant – each time we filed a document with the Court we have served [Defendant]."),)  The record, however, now reflects that the representation made by Plaintiffs' counsel to the Court was incorrect, and that none of the consent-to-join forms – the documents that were designed to give Defendant notice of the scope of the Opt-In Plaintiffs' claims – had, in fact, been served.  (*See* Dkt. 66.)  Indeed, it was not until after this Court directed Plaintiffs to file proof of service of the consent forms (well after the entry of the default judgment) that Plaintiffs apparently undertook to serve copies of the notice forms on Defendant.  (*See id*.)

This Court does acknowledge, as Plaintiffs point out (*see id*.), that, prior to the issuance of the default judgment, Plaintiffs served Defendant with (1) a copy of the November 21, 2018 Clerk's Certificate of Default, which noted the names of each of the Opt-In Plaintiffs and indicated that they had sought to join the action, and (2) a copy of Plaintiff's motion papers, which purported to provide details regarding the Opt-In Plaintiffs' claims.  Neither of these documents, however, should be deemed adequate substitutes for the consent forms.  The Clerk's Certificate of Default merely recited that the Opt-In Plaintiffs had filed "Consent To Join Form[s]," stating nothing about the contents of those forms (Dkt. 37), and Plaintiffs' motion papers, while setting out facts and legal argument, were *motion* papers – not a pleading, and not notice of a claim.  Certainly, Plaintiffs have cited no authority to suggest that adequate service of process can be avoided, as long as the asserted claims are then described in a motion for a default

judgment, and the motion itself is served.  At bottom, it cannot be said that, before obtaining the

default judgment in favor of all Plaintiffs in this case, Plaintiffs ever served Defendant with the

documents that have been held by courts to define – and afford notice of – the parameters of

opt-in plaintiffs' claims.  It therefore cannot be found that, prior to being held in default on the

Opt-In Plaintiff's claims, Defendant was given adequate notice of the claims it was facing from

those plaintiffs, as required to satisfy constitutional due process concerns.  *See Mullane v. Cent.

Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Based on Plaintiffs' lack of timely

service on Defendant of the notices filed by the Opt-In Plaintiffs, setting out the scope of their

claims, I recommend that the default judgment in favor of the Opt-In Plaintiffs be vacated, and

that damages be awarded only to the Named Plaintiffs.

> **2.      Should the Court Determine That Notice Was
> Sufficient For Defendant To Be Held in Default on the
> Opt-In Plaintiffs' Claims, Then Those Plaintiffs Should
> Only Be Awarded Damages Under the FLSA (and Not
> the NYLL), Based on the Contents of Their Opt-In Forms.**

Should the Court disagree with the reasoning set out above and find that, in the

circumstances presented, Defendant was given sufficient notice of the Opt-In Plaintiffs' claims

to enable the Court to hold Defendant in default on those claims, then I would nonetheless

recommend that the recovery awarded to the Opt-In Plaintiffs, upon Defendant's default, be less

than what has been requested.

Although, in their damages submissions, Plaintiffs purport to seek damages for the Opt-In

Plaintiffs under the NYLL (*see* Dkts. 52-53, 60-61), it remains the law in this Circuit that these

plaintiffs' consent forms should be held to govern the scope of their potential recovery, *see

Williams,* 358 F. Supp. 3d at 294 n.8, and, in this instance, the consent forms cannot be read as

broad enough to entitle the Opt-In Plaintiffs to recover under the NYLL.  On their face, the

consent forms are *explicitly limited* to the FLSA, stating *only* that the Opt-In Plaintiffs were

consenting to join the action "in order to seek redress for violations of the Fair Labor Standards

Act, pursuant to 29 U.S.C. § 216(b)."   (*See* Background, *supra*, at Section B; Dkts. 11-14, 23.)

Nowhere do the forms reference state law, nor do they contain any general language that could

even arguably be construed to reflect an intention to assert NYLL claims.   (*See generally id.*;

*Saleem,* 2014 WL 7106442, at *1; *cf. Hicks v. T.L. Cannon Corp.,* 35 F. Supp. 3d 329, 339

(W.D.N.Y. 2014) (finding that opt-in plaintiffs could seek relief under the NYLL where consent

form broadly stated that opt-in "wish[ed] to preserve and pursue any claim that [plaintiff] may

have to the greatest extent possible" and "expressly consent[ed] to the use of th[e]consent form

for purposes of making [opt-in plaintiff] a party plaintiff in any lawsuit and/or lawsuits that

plaintiffs' attorneys have brought and/or may bring on behalf of [opt-in plaintiff] and other

employees alleged to be similarly situated").)

     Especially in light of the requirement of Rule 54(c) that damages awarded upon a default

may not differ "in kind" from the damages that have been requested in the Complaint – a Rule

that should apply with equal force to opt-in plaintiffs, with respect to the notices they file

indicating the type of claims they seek to assert – this Court finds that in no event should the

Opt-In Plaintiffs, in this case, be permitted to recover damages, upon Defendant's default, on any

NYLL claims that they may now be trying to advance.   Rather, to the extent they may recover

here, their recovery should be limited to the damages that are available to them under the FLSA.

     Further, this Court notes that four of the five Opt-In Plaintiffs – Maldonado, Soriano,

Tapia, and Velos – ceased working for Defendant over three years prior to the filing of their

consent forms and, indeed, over three years prior even to the filing of the Complaint (*compare*

Maldonado Decl. ¶ 3 *with* Dkt. 1, 11; *compare* Soriano Decl. ¶ 3 *with* Dkt. 1, 14; *compare* Tapia

Decl. ¶ 3 *with* Dkt. 1, 23; *compare* Velos Decl. ¶ 3 *with* Dkt. 1, 13), and thus their claims would ordinarily be barred by the FLSA's statute of limitations.  Nonetheless, should the Court determine that these plaintiffs are entitled to pursue damages in connection with the default judgment that the Court has issued, then the Court should find that Defendant waived its statute-of-limitations defense by way of its default, *see Guallpa,* 2014 WL 2200393, at *2 n.2, although these plaintiffs' recovery would still then be limited to a three-year period, *see id.*

For the reasons discussed below, if the Court were to determine that it would be appropriate to award damages to the Opt-In Plaintiffs at this time, then the amounts that should be awarded to them, under the FLSA, should be calculated as follows:

### a.   FLSA Damages That Would Be Available to Perez

#### i.   Unpaid Overtime Compensation

In his submitted Declaration, Perez asserts that Defendant paid him (1) a fixed weekly salary of $550 for the period from August 2012 through March 2016, during which he generally worked 65 hours per week; (2) a fixed weekly salary of $650 for the period from April 2016 through November 2016, during which he generally worked 72 hours per week; and (3) a fixed weekly salary that was again $550, for the period from December 2016 through January 7, 2017, during which he generally worked 63 hours per week.  (Perez Decl. ¶¶ 12-17.)

Based on these asserted weekly hours, Perez would have worked between 23 and 32 hours of overtime each week.  In the absence of any evidence of an agreement between the parties that Perez's weekly salary would cover the full hours that he worked each week, this Court presumes that Perez's weekly salary covered only the first 40 hours of his work, which yields a base hourly rate of $13.75 for the periods from August through March of 2016, and December 2016 through January 7, 2017, and $16.25 for the period from April through

41

November of 2016.  As these rates were, for all relevant periods, more than the applicable

federal minimum wage rate (*see* Discussion, *supra*, at Section (I)(E)), Perez has demonstrated

that he was entitled to overtime pay under the FLSA at the rate of $20.63 per hour[6] for the

periods from August through March of 2016 and December 2016 through January 7, 2017, and

at the rate of $24.38 per hour for the period from April through November of 2016, for the hours

he worked in excess of 40 per week.  *See* 29 U.S.C. § 207(a)(1).

      Applying these figures, and the underlying assumption that Perez, like the Named

Plaintiffs, worked 50 weeks per year, Plaintiffs have reasonably shown that Perez was employed

by Defendant for (1) approximately 183.10 work weeks from August 2012 through March 2016;

(2) 33.79 work weeks from April through November of 2016; and (3) 4.53 work weeks from

December 2016 through January 7, 2017, for an overall total of 221.42 work weeks.  As Perez

would only be entitled to recover damages under the FLSA, however, and not the NYLL, his

recovery would be limited to a three-year period.  *Guallpa,* 2014 WL 2200393, at *2 n.2.

Accordingly, the time period for which Perez could recover damages would be limited to the

period from January 7, 2014 to January 7, 2017; applying Plaintiffs' assumption that Perez only

worked 50 weeks each year, this would result in a total of 150 work weeks.  In order to calculate

his potential damages, this Court has therefore deducted the earliest 71.42 work weeks from

Perez's total time employed with Defendant, resulting in a reduction of his hours for the initial

period of his employment (*i.e.*, the period from August 2012 through March 2016) to only

111.68 work weeks, instead of 183.10 work weeks, as set out above.

      Therefore, for the first of the three identified periods of his employment, Perez would be

entitled to recover $57,598.96 in unpaid overtime compensation ($20.63/hour x 25 hours/week x

---

[6] This Court has rounded the overtime rates used in Plaintiff's chart for Perez.

111.68 weeks).  For the second period, he would be entitled to recover $26,362.55 ($24.38/hour x 32 hours/week x ~33.79 weeks).  And finally, for the third period, he would be entitled to $2,150.85 ($20.63/hour x 23 hours/week x ~4.53 weeks).

In total, in the event the Court determines that Perez should be awarded damages at this time, the amount to which he would be entitled, under the FLSA, for his unpaid overtime would be **$86,112.36**.

### ii.      Liquidated Damages

If found entitled to damages, then Perez should also be awarded **$86,112.36** in liquidated damages, as the FLSA provides for liquidated damages in the amount of 100 percent of a plaintiff's unpaid wages.  *See* 29 U.S.C. § 216(b); *see also, e.g.*, *Galeana*, 120 F. Supp. 3d at 317.

### iii.      Prejudgment Interest

As set out above (*see* Discussion, *supra*, at Section (I)(I)), prejudgment interest is not available where liquidated damages are awarded under the FLSA.  As Perez may only be found to have recoverable damages under the FLSA (and not the NYLL), I do not recommend that he be awarded any prejudgment interest.

### b.      FLSA Damages That Would Be Available to Maldonado

### i.      Unpaid Overtime Compensation

As set out above, Maldonado alleges that, throughout his employment with Defendant, he was paid a fixed weekly salary of $560.  (Maldonado Decl. ¶ 12.)  This Court takes that allegation as true, as well as the alleged fact that Maldonado generally worked 60 hours per week.  (*Id.* ¶ 11-12.)  Thus, this Court concludes that, after the first 40 hours, Maldonado worked 20 hours of overtime per week throughout his employment with Defendant.  Given the absence

of an agreement between the parties that Maldonado's weekly salary would cover the full hours

that he worked each week, this Court presumes that Maldonado's weekly salary covered only the

first 40 hours of his work, *see Pastor*, 2017 WL 5625556, at *2-3; *Pinovi*, 2015 WL 4126872, at

*4-5; *Amaya*, 2012 WL 130425, at *9, which yields a base hourly rate of $14.  As this base

hourly rate was, for all relevant periods, more than the applicable federal and state minimum

wage rates (*see* Discussion, *supra*, at Section I(D)), Maldonado, if allowed to recover at this

time, would be entitled to overtime pay (*i.e.*, one and one-half times his regular rate, *see* 29

U.S.C. § 207(a)(1)) at an hourly rate of $21 for the hours he worked in excess of 40 per week.

Plaintiff's damages chart lists Maldonado's start date as August 6, 2012, and his end date

as August 30, 2014, resulting in approximately 103.57 work weeks, after subtraction of his

pro-rated time off.  In total, this amounts to an underpayment of **$43,500.00** in overtime wages to

Maldonado ($21.00/hour x 20 hours/week x ~103.57 weeks), and, if an award is made in

Maldonado's favor, I recommend that he be awarded this amount.

### ii.   Liquidated Damages

If granted an award, Maldonado, like Perez, would also be entitled to liquidated damages

under the FLSA, in the amount of 100 percent of his unpaid wages.  As his unpaid wages totaled

**$43,500.00**, this would represent the amount of liquidated damages to which he would

additionally be entitled.

### iii.   Prejudgment Interest

Assuming liquidated damages are awarded to Maldonado under the FLSA, he would not

also be entitled to recover prejudgment interest, for the reasons discussed above, and none should

be awarded.

c.      **FLSA Damages That Would Be Available to Soriano**

i.      **Unpaid Overtime Compensation**

Soriano alleges that, throughout his employment with Defendant, he was paid a fixed weekly salary of $400.  (Soriano Decl. ¶ 13.)  This Court takes that allegation as true, as well as the alleged fact that Soriano generally worked 66 to 72 hours per week.  (*Id.* ¶¶ 10-11.)  Thus, this Court concludes that, after the first 40 hours, Soriano worked, on average, 29 hours of overtime per week throughout his employment with Defendant.  Given the absence of an agreement between the parties that Soriano's weekly salary would cover the full hours that he worked each week, this Court presumes that Soriano's weekly salary covered only the first 40 hours of his work, *see Pastor*, 2017 WL 5625556, at *2-3; *Pinovi*, 2015 WL 4126872, at *4-5; *Amaya*, 2012 WL 130425, at *9, which yields a base hourly rate of $10.  As this base hourly rate was, for all relevant periods, more than the applicable federal and state minimum wage rates (*see* Discussion, *supra*, at Section I(D)), Soriano was entitled to overtime pay (*i.e.*, one and one-half times his regular rate, *see* 29 U.S.C. § 207(a)(1)) at an hourly rate of $15.00 for the hours he worked in excess of 40 per week.

Plaintiff's damages chart lists Soriano's start date as August 6, 2012, and his end date as September 27, 2014, resulting in approximately 107.42 work weeks, after subtraction of his pro-rated time off.  In total, this amounts to an underpayment of **$46,726.65** in overtime wages to Soriano ($15.00/hour x 29 hours/week x ~107.42 weeks), and, if the Court determines that Soriano should be awarded damages at this time, I recommend that he be awarded this amount, under the FLSA.

### ii.      Liquidated Damages

Like the other Opt-In Plaintiffs, Soriano, if awarded damages, would also be entitled to recover liquidated damages under the FLSA, in the amount of 100 percent of his unpaid wages; in his case, this would be another **$46,726.65**.

### iii.      Prejudgment Interest

For the reasons already discussed, Soriano would not be entitled to recover prejudgment interest, in addition to liquidated damages, under the FLSA.

### d.      FLSA Damages That Would Be Available to Tapia

### i.      Unpaid Overtime Compensation

Tapia contends that, throughout his employment with Defendant, he was paid a fixed weekly salary of $480.  (Tapia Decl. ¶ 13.)  This Court takes that allegation as true, as well as the alleged fact that Tapia generally worked 110 hours per week.  (*Id.* ¶¶ 10-11.)  Thus, this Court concludes that, after the first 40 hours, Tapia worked 70 hours of overtime per week throughout his employment with Defendant.  Given the absence of an agreement between the parties that Tapia's weekly salary would cover the full hours that he worked each week, this Court presumes that Tapia's weekly salary covered only the first 40 hours of his work, *see Pastor*, 2017 WL 5625556, at *2-3; *Pinovi*, 2015 WL 4126872, at *4-5; *Amaya*, 2012 WL 130425, at *9, which yields a base hourly rate of $12.  As this base hourly rate was, for all relevant periods, more than the applicable federal and state minimum wage rates (*see* Discussion, *supra*, at Section I(D)), Tapia was entitled to overtime pay (*i.e.*, one and one-half times his regular rate, *see* 29 U.S.C. § 207(a)(1)) at an hourly rate of $18.00 for the hours he worked in excess of 40 per week.

Plaintiff's damages chart lists Tapia's start date as June 3, 2013 and his end date as March 27, 2015, resulting in approximately 90.93 work weeks, after subtraction of his pro-rated

time off.  This means that, under the FLSA, Tapia was underpaid by **$114,576.92** in overtime

wages ($18.00/hour x 70 hours/week x ~90.93 weeks), and, if an award is granted in his favor,

he should be awarded that amount.

### ii.      Liquidated Damages

Like the other Opt-In Plaintiffs, Tapia would also entitled to liquidated damages under

the FLSA, in the amount of 100 percent of his unpaid wages, for an additional **$114,576.92**.

### iii.      Prejudgment Interest

As with the other Opt-In Plaintiffs, Tapia would not be entitled to prejudgment interest, if

he were awarded liquidated damages under the FLSA.

### e.      FLSA Damages That Would Be Available to Velos

### i.      Unpaid Overtime Compensation

Velos alleges that, throughout his employment with Defendant, he was paid a fixed

weekly salary of $420.  (Velos Decl. ¶ 13.)  This Court takes that allegation as true, as well as the

alleged fact that Velos generally worked 76 to 84 hours per week.  (*Id.* ¶¶ 10-11.)  Thus, this

Court concludes that Velos worked, on average, 40 hours of overtime per week throughout his

employment with Defendant.  As there is no suggestion of an agreement between the parties that

Velos's weekly salary would cover the full hours that he worked each week, this Court

presumes, for the same reasons set forth above, that Velos's weekly salary covered only the first

40 hours of his work, resulting in a base hourly rate of $10.50.  As this base hourly rate was, for

all relevant periods, more than the applicable federal and state minimum wage rates (*see*

Discussion, *supra*, at Section I(D)), Velos was entitled to overtime pay (*i.e.*, one and one-half

times his regular rate, *see* 29 U.S.C. § 207(a)(1)) at an hourly rate of $15.75 for the hours he

worked in excess of 40 per week.

Plaintiff's damages chart lists Velos's start date as October 7, 2013 and his end date as January 31, 2015, resulting in approximately 66.07 work weeks, after subtraction of his pro-rated time off.  Based on this, Velos was underpaid for his overtime hours by **$41,625.00** ($15.75/hour x 40 hours/week x ~66.07 weeks), and, if an award is granted to him, he should be awarded that amount.

### ii.     Liquidated Damages

For the same reasons set forth above with respect to the other Opt-In Plaintiffs, Velos would also be entitled to liquidated damages under the FLSA, in the amount of 100 percent of his unpaid wages, or an additional **$41,625.00**.

### iii.    Prejudgment Interest

Once again, as Velos's recovery, if any, should be only under the FLSA, he would not be entitled to recover both liquidated damages and prejudgment interest.

## III.   ATTORNEYS' FEES AND COSTS

Plaintiffs seek $299,302.50 in attorneys' fees for 679.40 hours of work performed by counsel and support staff in connection with this action.  (*See* Brooks Decl. Ex. I ("Fee Summary") (Dkt. 53-9).[7])  Plaintiffs also seek litigation costs in the amount of $4,411.26.  (*See* Dkt. 53-10 ("Sum of Costs").)  As discussed below, this Court finds both the requested fees and costs to be markedly excessive, for a number of reasons.  For these reasons, I recommend that, if

---

[7] The total hours reflected in this summary equal 718.3, reflecting 379.8 hours of attorney time and 338.5 hours of paralegal and law-clerk time.  (*Id.*)  Plaintiffs have voluntarily deducted 38.9 hours of paralegal and law-clerk time from their ultimate fee request, and, thus, for counsel's support staff, Plaintiffs are only seeking compensation for 299.6 hours.  (*See id.*)  It is not clear whether the 38.9 hours were deducted from law-clerk time, paralegal time, or a combination thereof.  This Court notes, however, that the deducted hours are equal to the total amount of time billed by a "New York Law Clerk," and thus the Court has presumed, for the purposes of its analysis, that Plaintiffs deducted the full amount of the New York Law Clerk's hours from their fee request.  (*Id.*)

the Court accepts my recommendation that the default judgment be vacated as to the Opt-In Plaintiffs' claims, then the Named Plaintiffs be awarded $78,576.75 in attorneys' fees and $2,227.77 in costs.  If, instead, the Court were to determine that damages should, in fact, be awarded to all Plaintiffs at this time, then I would recommend that Plaintiffs be awarded $104,769.00 in attorneys' fees and $2,970.36 in costs.

### A.   <u>Reasonable Hourly Rates</u>

In this case, Plaintiffs were represented by attorneys Lewis Steel, Esq. ("Steel"), Molly Brooks, Esq. ("Brooks"), Cheryl-Lyn Bentley, Esq. ("Bentley"), and Chauniqua D. Young, Esq. ("Young"), of the law firm of Outten & Golden LLP ("Outten & Golden," or the "Firm").  (Fee Summary.)  Various unidentified support staff at the Firm, including paralegals and law clerks, also performed work on this matter.  (*Id.*)

Steel graduated from New York Law School in 1963, where he was editor of the Law Review, and he now serves as Senior Counsel to the Firm.  (Brooks Decl. ¶ 29.)  He is an experienced litigator in the field of employment law, and he requests approval of a rate of $900 per hour.  (*Id.*)  Brooks received her law degree from Northeastern University in 2004, and is a partner in the Firm.  (Brooks Decl. ¶ 26; Fee Summary.)  She has represented plaintiffs in employment cases for over 10 years, serves on the employment law committees of various bar associations, and requests approval of a rate of $750 per hour.  (Brooks Decl. ¶ 26.)

Bentley and Young are both associates at the Firm.  Plaintiffs request that the Court find $475 per hour to be a reasonable rate for Bentley and $450 per hour to be a reasonable rate for Young.  (Fee Summary.)  Bentley graduated from Yale Law School in 2011 and became associated with the Firm in 2015, after clerking for the Honorable Petrese B. Tucker, Chief Judge of the United States District Court for the Eastern District of Pennsylvania.  (Brooks Decl. ¶ 27.)

Although Bentley has "exclusively represented employees in employment law matters" since arriving at Outten & Golden, it is unclear whether Bentley had any experience in the employment law field prior to her time at the Firm.  (*See generally id.*)  Young graduated from Cardozo Law School in 2012, and became associated with the Firm in September 2014, later leaving and then returning to the Firm in 2018, following a clerkship with the Honorable Barbara C. Moses, a United States Magistrate Judge in this District.  (Brooks Decl. ¶ 28.)  It is also unclear whether Young had any experience in employment law prior to her arrival at Outten & Golden.  (*See generally id.*)

The rates requested by Plaintiffs' counsel are not justified here.  Courts in this District "have consistently found that the reasonable hourly billing rate for partners in wage-and-hour cases is between $300 and $400 per hour and that the reasonable hourly billing rate for mid-level associates is approximately $200 per hour.  *McGreevy v. Life Alert Emergency Response, Inc.,* 258 F. Supp. 3d 380, 389 (S.D.N.Y. 2017).  Although "some courts in this District have found that a higher hourly billing rate is appropriate for Outten & Golden attorneys," *id.*, the rates awarded to Outten & Golden attorneys of similar experience to those here have nevertheless been lower than the rates sought in this case, *see id.* at 389-90 (collecting cases, and awarding, for example, $350/hour to Outten & Golden associates with more than eight years of experience and $250/hour for an associate with five years of experience).

Moreover, counsel's performance in this case, as well as their inquest submissions, do not reflect what this Court would expect from counsel who hold themselves out as highly experienced attorneys who should be granted hourly rates significantly above the norm.  As discussed above, Plaintiffs' counsel neglected to serve important filings on Defendant before default judgment was entered (despite representing to the Court that they had done so); submitted

initial damages calculations that, due to lack of clarity, this Court was unable to replicate for purposes of review, resulting in a direction from this Court that counsel supplement and explain their presented figures; failed to address key legal issues, such as the ability of the Opt-In Plaintiffs to recover damages under the NYLL when their consent forms made no reference to state law, and the effect the statute of limitations should play in the Court's analysis, should the Opt-In Plaintiffs be found to be entitled to recover only under the FLSA; and, finally, made notable legal errors in their calculations of spread-of-hours damages and prejudgment interest.

Overall, based on a review of the rates that have been previously been awarded in this District to Outten & Golden attorneys, rates that have been awarded to other counsel in wage-and-hour cases, and counsel's performance in this particular case, this Court cannot recommend that counsel receive a premium rate here, for their supposedly superior experience and subject-matter expertise. Based on Steel's senior level, and the fact that, 12 years ago, when he was of counsel to the firm (as opposed to senior counsel), he was awarded the rate of $625 per hour by a court in this District, *see Rozell v. Ross-Holst*, 576 F. Supp. 2d 527 (S.D.N.Y. 2008), I recommend that he be awarded a rate of $700 per hour. I further recommend that Brooks, who seems to have taken primary responsibility for this action, be awarded the rate of $450 per hour, and that Bentley's and Young's requested rates each be reduced to $250 per hour.

Finally, Outten & Golden requests a rate of $270.00 per hour for work performed by paralegals, and $250.00 per hour for law clerks. (*See* Fee Summary.) Typically, however, courts in this District award paralegal rates in the range of $100 to $150 per hour. *William*, 2018 WL 3370678, at *8 (awarding Outten & Golden paralegal fees at a rate of $150 per hour and law clerk fees at a rate of $100 per hour and collecting cases). In this case, Plaintiffs' damages submissions provide no details regarding the relative experience of the paralegals who billed

time to this matter, and therefore this Court recommends that the rates for both the Firm's paralegals and law clerks be reduced to $100 per hour.

### B.   **Reasonable Hours**

In support of Plaintiffs' request for attorneys' fees, Outten & Golden has provided the Court with a copy of its time records, which appear to have been maintained contemporaneously during the course of the litigation, and which show the billable hours counsel expended during the prosecution of the action.  This Court has reviewed the records submitted by counsel and, for several reasons, finds that that stated hours should be reduced.

First, this Court notes that this matter involved straightforward claims under the FLSA and NYLL – claims with which Plaintiffs' counsel purport to be well-acquainted – and Defendant has defaulted.  Even accepting counsel's representations that they made valiant attempts to resolve the matter prior to bringing the instant litigation, and acknowledging that this case involves seven Plaintiffs and several different types of claimed damages, the nearly $300,000 sought by Plaintiffs' counsel – representing approximately 680 hours of work – would appear to be greatly disproportionate to the amount of work required to resolve a case in which the defendant has failed to appear.  *See, e.g., Bank of Am., N.A. v. Brooklyn Carpet Exch., Inc.,* No. 15cv5981 (LGS) (DF), 2016 WL 8674686 (S.D.N.Y. May 13, 2016) (finding time expended to be excessive in light of default posture of the case, and applying 25% reduction to requested attorneys' fees), *report and recommendation adopted,* 2016 WL 3566237 (June 27, 2016).

Second, this Court concludes that there are several tasks and categories reflected in the time records submitted by counsel that indicate excessive time spent on this matter.  For example, counsel represents that approximately 36 hours were spent on drafting and filing the Complaint, but the document is not lengthy, and it contains relatively few specific allegations

regarding the parties, and far more boilerplate.  (*See generally* Ex. H; *see also Ortiz v. Chop't Creative Salad Co. LLC,* 89 F. Supp. 3d 573, 593 (S.D.N.Y. 2015) (finding that "[b]etween [Outten and Golden's] experience and background and their ability to utilize previous complaints in drafting the instant complaint . . . the number of attorneys and the number of hours expended drafting, editing and revising the complaint was excessive, duplicative and unnecessary").)  This Court is also skeptical that, even considering that translation services were apparently needed to communicate with their clients, it was appropriate to spend approximately 16 hours preparing a retainer agreement for Alonso.  (*See generally* Ex. H.)  Most strikingly, counsel apparently expended approximately 90 hours on the motion for default judgment filed in September of 2018; even assuming this time was not excessive, counsel then spent approximately *another* 90 hours on preparing their inquest submissions, despite the fact that there are substantial similarities between the Complaint, the default judgment motion filed in September and supplemental filings in connection with that motion, and the papers filed in support of Plaintiff's damages.  (*See generally* Ex. H; Dkts. 1, 16-18, 52-53.)

Third, a number of time entries submitted by counsel are too vague for this Court to determine whether they reflect time reasonably spent.  For instance, on November 4-5, 2018, Bentley billed a total of 5.4 hours to "[p]repare for default hearing."  The time entries do not specify the tasks performed by Bentley to prepare for the hearing, and, in light of the length of time involved, this Court assumes, but cannot confirm, that this "preparation" must have reflected multiple tasks that were not segregated in the billing, so as to enable this Court to ascertain their reasonableness.

Relatedly, this Court has identified a number of instances in which Bentley, Steel, and a paralegal with the initials "JSQ" submitted time entries that are "block billed" (*i.e.,* multiple

tasks are clustered together in the same billing entry).[8]   While the practice of block billing "is not

prohibited in this Circuit," *Rodriguez v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999);

*see also, e.g., Hutchinson v. McCabee*, No. 95cv5449 (JFK), 2001 WL 930842, at *4 (S.D.N.Y.

Aug. 15, 2001), it is difficult for the court to evaluate whether the time spent on a given task was

excessive where the attorney has grouped different tasks together in a single time entry.   Thus, at

times, courts have reduced or even disallowed requested attorneys' fees where the supporting

time records were not broken out with sufficient detail to enable the courts to determine the

reasonableness of the time spent on particular tasks.   *See, e.g., Green v. City of New York*, 403 F.

App'x 626, 630 (2d Cir. 2010) (affirming hours reduction for pervasive block billing in time

entries); *Bank v. Ho Seo,* No. 06cv15445 (LTS) (RLE), 2009 WL 5341672, at *5 (S.D.N.Y.

Dec. 16, 2009) (reducing a fee award and noting that the process of combining "multiple tasks

into one entry" blocks the court's "efforts to evaluate the reasonableness of any of the listed

activities" (internal quotation marks and citation omitted)), *adopted as modified on other*

*grounds,* 2010 WL 129681 (Jan. 13, 2010).   Here, there are several time entries that do not

specify the amount of time spent on each listed task, and thus this Court cannot determine

whether an excessive amount of time was spent on any of the listed tasks.   While it is possible

that the total time listed was all reasonably spent, it is difficult for this Court to confirm this.

---

[8] By way of example, on October 22, 2018, "JSQ" billed 1.6 hours to "[r]eview and finalize opt-in plaintiff declaration; prepare cover letter for same; correspondence with CDB re opt-in plaintiff declaration; prepare FedEx delivery of cover letter and declaration to opt-in plaintiff (Brooks Decl. Ex. H, at 21); on October 30, 2018, Bentley billed 1.56 hours to "[r]eview exhibits for supplemental filing, amend proposed order, declaration, and review damages" (*id.*); and on January 2, 2019, Steel billed three hours to "review documents in binders; develop approach re damages of Plaintiff and Opt-Ins; review emails with CDB re client damages" (*id.,* at 26).

Where attorney time records are inadequate to allow for judicial review, it is appropriate for the court to reduce the hours stated, *see Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  A percentage reduction, typically in the range of 20 to 30 percent, is often applied as a "practical means of trimming fat" from a fee application.  *Carey*, 711 F.2d at 1146; *see also, e.g., Kirsch v. Fleet St. Ltd.,* 148 F.3d 149, 173 (2d Cir. 1998) (affirming 20% fee reduction for vagueness and other deficiencies in attorney billing records); *Terminate Control Corp. v. Nu–Life Constr. Corp.,* 28 F.3d 1335, 1342-43 (2d Cir. 1994) (30% fee reduction for "lack of specific record keeping-was within the district court's discretion); *Suchodolski Associates, Inc. v. Cardell Financial Corp.,* Nos. 03cv4148 (WHP), 04cv5732(WHP), 2008 WL 5539688, at *2 (S.D.N.Y. Dec. 18, 2008) (collecting cases applying percentage reductions of up to 30%).

In light of the default posture of this case, what this Court perceives as excessive billing for certain tasks, and entries which are too vague to permit this Court's review, this Court recommends that the number of hours billed by counsel to this case be reduced, overall, by 30 percent.

### C.    Lodestar Calculation

Using the reasonable rates and hours described above (*i.e.*, with counsel's stated hours reduced by 30 percent) would result in the following lodestar calculation:

| Timekeeper | Reasonable Hourly Rate | | Reasonable Hours Worked | | Fees Incurred |
|---|---|---|---|---|---|
| Lewis Steel, Esq. | $700.00 | x | 15.96 | = | $11,172.00 |
| Molly Brooks, Esq. | $450.00 | x | 50.96 | = | $22,932.00 |
| Cheryl-Lyn Bentley, Esq. | $250.00 | x | 168.21 | = | $42,052.50 |
| Chauniqua D. Young, Esq. | $250.00 | x | 30.73 | = | $7,682.50 |
| Paralegals | $100.00 | x | 198.1 | = | $19,810.00 |
| Law Clerks | $100.00 | x | 11.2 | = | $1,120.00 |
| | | | | TOTAL: | $104,769.00 |

This Court finds no exceptional circumstances here that would warrant deviation from the lodestar.  *See Perdue*, 559 U.S. at 552.  This Court notes, however, that the above analysis is based on a review of all of the fees incurred by counsel in connection with this action, including the prosecution of the claims of the five Opt-In Plaintiffs.  If the Court were to agree with the recommendation set out herein that the default judgment be vacated as to those plaintiffs, then Plaintiffs should not recover, at least at this juncture, for the time spent by their counsel to prosecute the unsuccessful claims.  This Court finds that it would generally be reasonable to assign 25 percent of counsel's time to the prosecution of the claims of the Opt-In Plaintiffs.  Accordingly, I recommend that the Named Plaintiffs be awarded **$78,576.75** in attorneys' fees, representing a 25-percent reduction of the lodestar set out above.  If, of course, the Court were to determine that the default judgment should stand in its entirety and that the Opt-In Plaintiffs should be awarded damages, then I would recommend that the full lodestar of **$104,769.00** be awarded.

### D.   Costs

Plaintiffs additionally seek litigation costs in the amount of $4,411.26, including $1,009.20 for "computerized research," $63.88 for courier fees, a $400 filing fee, $159.84 for court transcript fees, $682.28 for FedEx/UPS fees, $120.67 for meals, $815.86 for printing/copying/scanning fees, $70 for process server fees, $32.06 for telephone charges, $40 for translation fees, $934.18 for travel expenses, and $83.29 for USPS postage.  (Sum of Costs.) Although Plaintiffs did not initially attach supporting documentation for these costs (*see generally* Sum of Costs), Plaintiffs' supplemental filing included a breakdown and documentation supporting most of their requests for costs (Brooks Supp. Decl., Ex. N-O).

To a certain extent, this Court finds that the costs sought by Plaintiffs are proper and adequately supported.  Plaintiffs have not provided any documentation at all, however, for the costs they reportedly incurred for postage.  According to Plaintiffs' counsel, receipts for these expenses are not available because the records "are maintained only for a few months."  (Brooks Supp. Decl. ¶¶ 8-9.)  It is Plaintiff's burden, however, to demonstrate that the litigation costs sought were reasonably incurred and are properly recoverable from the defaulting Defendants, and Plaintiffs' mere representation that such costs were incurred is not sufficient.  Moreover, Plaintiffs have provided no explanation as to why, in a case where, as noted above, counsel have touted their knowledge and expertise, and where the only motion practice prior to the damages inquest involved a motion for a default judgment, it was reasonable for counsel nonetheless to spend over $1,000.00 in legal research costs; why, in a case that proceeded to a default judgment following Defendant's nonappearance, it would be appropriate to require Defendant to reimburse Plaintiffs' counsel for over $100 in meal orders; or why, in a case where all Plaintiffs are seemingly located in New York City, and where, based on the Docket, the prosecution of the case necessitated only two court appearances, it was reasonable for counsel to have incurred nearly $1000.00 in travel expenses.  Absent explanation, this Court cannot ascertain the reasonableness of these expenses, which, on their face, seem excessive.

Based on the lack of documentation, I recommend that the requested postage costs be disallowed, and based on the lack of adequate explanation and the circumstances of this case, I recommend that the requested costs for computerized research be reduced by 30 percent and that the costs of meals and travel be disallowed.  I also recommend that, like the requested attorneys' fees, Plaintiffs' requested costs be subject to a further reduction of 25 percent, if the Court accepts my recommendation that the default judgment be partially vacated.  In this Court's view,

such a reduction would yield a reasonable approximation of the costs incurred by Plaintiffs'
counsel to prosecute only the Named Plaintiffs' claims.

Accordingly, I recommend that the Named Plaintiffs be awarded costs in the reduced
amount of **$2,227.77** (if the default judgment is vacated as to the claims of the Opt-In Plaintiffs),
calculated as follows:

$706.44 (computerized research)
  63.88 (courier fees)
 400.00 (filing fee)
 159.84 (court transcript fees)
 682.28 (FedEx/UPS fees)
 815.86 (printing/copying/scanning fees)
  70.00 (process server fees)
  32.06 (telephone charges)
  40.00 (translation fees)
**$2,970.36**
-  742.59 (less 25%)
**$2,227.77**

and the somewhat larger amount of **$2,970.36** (should the Court determine that the Opt-In
Plaintiffs are also entitled to recover at this time).

## <u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that upon its default, Defendant be
held liable for:

1.      Damages to plaintiff Alonso in the amount of $183,026.99
        representing:

        a.      $74,994.85 in unpaid overtime wages;

        b.      $74,994.85 in liquidated damages;

        c.      $7,500.00 in statutory damages for failure to provide wage
                statements and wage notices;

        d.      $25,537.29 in prejudgment interest; plus

additional interest to be calculated by the Clerk of Court, at a rate of nine percent per annum, from March 29, 2019 through the date of final judgment; and

2.     Damages to plaintiff Flores in the amount of $140,093.32, representing:

     a.     $55,912.09 in unpaid overtime wages;

     b.     $55,912.09 in liquidated damages;

     c.     $6,900.00 in statutory damages for failure to provide wage statements and wage notices;

     d.     $21,369.14 in prejudgment interest; plus

additional interest to be calculated by the Clerk of Court, at a rate of nine percent per annum, from March 29, 2019 through the date of final judgment;

As for the Opt-In Plaintiffs, I recommend that the default judgment entered in Plaintiffs' favor in this case be vacated as to the Opt-In Plaintiffs' claims, and that no damages be awarded to them. If, however, the Court should determine that Defendant had adequate notice of the Opt-In Plaintiffs' claims, then I would recommend that these plaintiffs be awarded damages only under the FLSA, in the following amounts, and without prejudgment interest:

1.     As to opt-in plaintiff Perez, $172,224.72, representing $86,112.36 in unpaid overtime compensation and another $86,112.36 in liquidated damages;

2.     As to opt-in plaintiff Maldonado, $87,000.00, representing $43,500.00 in unpaid overtime compensation and another $43,500.00 in liquidated damages;

3.     As to opt-in plaintiff Soriano, $93,453.30, representing $46,726.65 in unpaid overtime compensation and another $46,726.65 in liquidated damages;

4.     As to opt-in plaintiff Tapia, $229,153.84, representing $114,576.92 in unpaid overtime compensation and another $114,576.92 in liquidated damages; and

> 5.   As to opt-in plaintiff Velos, $83,250.00, representing $41,625.00
>       in unpaid overtime compensation and another $41,625.00 in
>       liquidated damages.

I further recommend that Plaintiffs be awarded attorneys' fees and costs.  If the Court

accepts the above recommendation that the default judgment be vacated, and that damages be

awarded only in favor of the Named Plaintiffs, then I recommend an attorneys' fee award of

$78,576.75, and a cost award of $2,227.77.  If the Court were to award damages to the Opt-In

Plaintiffs, as well as the Named Plaintiffs, then I would recommend higher awards of fees and

costs, in the amounts of $104,769.00 in attorneys' fees and $2,970.36 in costs.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).

Such objections, and any responses to objections, shall be filed with the Clerk of Court, with

courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer, U.S.D.J.,

United States Courthouse, 500 Pearl Street, Room 2201, New York, New York, 10007.  Any

requests for an extension of time for filing objections must be directed to Judge Engelmayer.

FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A

WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v.

Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054

(2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd*.,

838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Plaintiffs' counsel is directed to serve a copy of this Report and Recommendation on Defendant by mail, and to file proof of such service on the Docket of this action, no later than July 2, 2020.

Dated:  New York, New York
        June 29, 2020

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

The Hon. Paul A. Engelmayer, U.S.D.J.

Plaintiffs' counsel (via ECF)