UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
: 
JOSE ALONSO and MARCELO JUAREZ FLORES :
*on behalf of themselves and all other similarly situated,* :          18 Civ. 4745 (PAE) (DCF)
:
Plaintiffs,  :          OPINION & ORDER
:
-v-   :
:
:
NEW DAY TOP TRADING, INC.,   :
:
Defendant.  :
------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Jose Alonso ("Alonso") and Marcelo Juarez Flores ("Flores") (collectively, "Named Plaintiffs") bring this action against their employer New Day Top Trading, Inc. ("New Day Top"), alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C §§ 201, *et seq.*, and the New York Labor Law ("NYLL") §§ 190, *et seq.*, and 650, *et seq.* Plaintiffs seek unpaid overtime wages, unpaid spread-of-hours wages, liquidated damages, statutory damages, prejudgment interest, and attorneys' fees and costs from New Day Top.

After the filing of the Complaint, five other individuals who purported to have been similarly situated to the Named Plaintiffs with respect to New Day Top's allegedly unlawful wage-and-hour practices—Andres Maldonado ("Maldonado"), Jose Felix Perez ("Perez"), Rafael Soriano ("Soriano"), Gustavo Martinez Tapia ("Tapia"), and William Velos ("Velos") (collectively, "Opt-In Plaintiffs")[1]—filed notices pursuant to 29 U.S.C. § 216(b), indicating their consent to join the action and assert their own FLSA claims.

---

[1] The Court refers to all seven plaintiffs—both Named and Opt-In—collectively as "plaintiffs."

1

New Day Top defaulted. The Court entered default judgment on liability and referred the case to Magistrate Judge Debra C. Freeman for an inquest into damages. Before the Court is Judge Freeman's Report and Recommendation (the "Report"), Dkt. 67, to which the plaintiffs have objected in part ("Objections"), Dkt. 71. This decision resolves plaintiffs' Objections and adopts the Report in its entirety.

I.  **Background**[2]

New Day Top, a New York corporation, operates three warehouses in New York and one in New Jersey. Dkt. 1 ("Compl.") ¶ 19. The facts pertinent to each plaintiff's claims are as follows.

A.  **Alonso**

Alonso asserts that between January 2014 and November 2016, he was employed as a forklift driver in New Day Top's Brooklyn and Queens warehouses.[3] *Id.* ¶ 6. According to the Complaint, Alonso worked 10- and 11-hour shifts six days a week. *Id.* ¶ 8. In his Declaration submitted in connection with the damages inquest, Alonso estimated that he worked 63 hours per week, slightly less than his 65-hours-per-week estimate in the Complaint. *See* Dkt. 53-1 ("Alonso Decl.") ¶ 11; Compl. ¶ 9. Alonso contends that he was paid a "lump sum cash payment of $600.00 each week, regardless of the number of hours [he] worked." Alonso Decl. ¶ 13;

---

[2] The following factual summary is drawn from the Report and the Court's review of the record.

[3] The Report correctly notes that none of the alleged FLSA and NYLL violations occurred within this District, but that the Named Plaintiffs allege that New Day Top's principal place of business is within the District. Compl. ¶ 20. In any event, any challenge to venue was waived by New Day Top's failure to appear or timely answer the Complaint. *See Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) ("[A] defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default."); *see also MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 108 (E.D.N.Y. 2014); *Gerety v. Sunrise Exp., Inc.*, No. 95 Civ. 2090 (HB), 1996 WL 19047, at *2 (S.D.N.Y. Jan. 18, 1996) (defendant "waived his defense of improper venue by defaulting").

2

Compl. ¶ 66. Alonso asserts that he was not paid overtime wages for the hours he worked in excess of 40 hours per week, and that he did not receive "spread-of-hours" pay, in that he was not compensated at an additional hour of minimum wage for the hours he worked in excess of 10 hours per day. Compl. ¶¶ 54, 55. Alonso also asserts that he was never provided with any wage statements or notices. *Id.* ¶ 59.

### B.     Flores

Flores asserts that between June 2014 and July 2015, he was employed as a driver's assistant at New Day Top's Queens warehouses. *Id.* ¶ 13. According to the Complaint, Flores worked "six days each week, starting at 7:00 a.m. and ending between 8:00 p.m. and 11:00 p.m. each day," which totaled approximately 75 to 85 hours per week. *Id.* ¶¶ 15, 16. But according to his Declaration, Flores typically worked until 8:00 or 9:00 p.m. on Mondays, until 8:00 or 8:30 p.m. on Tuesdays, and until 11:00 p.m. on Fridays, totaling between approximately 87 hours and 45 minutes to 96 hours and 45 minutes per week. Dkt. 53-2 ("Flores Decl.") ¶¶ 10, 11. Like Alonso, Flores asserts that he was paid a "lump sum cash payment of $640.00 each week regardless of the number of hours [he] worked." *Id.* ¶ 13.

Flores claims that he was not paid overtime wages or spread-of-hours pay, Compl. ¶¶ 14, 16, 54; Flores Decl. ¶ 12, or provided with wage statements or wage notices, Compl. ¶ 59; Flores Decl. ¶¶ 16–17.

### C.     The Opt-In Plaintiffs

Like Alonso and Flores, the Opt-In Plaintiffs each claim that they worked as forklift drivers and/or driver's assistants for New Day Top. Report at 6. They, too, claim that they

3

worked more than 40 hours per week, that they were paid a fixed weekly salary in cash, and that they were denied overtime compensation.[4] *Id.*

## II. Procedural History

On May 30, 2018, the Named Plaintiffs filed the Complaint. Dkt. 1. Between August 16 and October 29, 2018, the Opt-In Plaintiffs separately filed notices of their consent to join the action. Dkts. 11–14, 23. Each form contained the same language: "I consent to be a party plaintiff in a lawsuit against [New Day Top], and/or related entities and individuals . . . in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b)." *See id.*

On September 11, 2018, after New Day Top failed to respond, plaintiffs moved for a default judgment. Dkts. 15–17. At the November 8, 2018 default judgment, hearing, the Court noted that the motion for a default judgment had been filed before Tapia filed his opt-in notice, leading the Court to direct plaintiffs' counsel to file a separate motion for a default judgment on Tapia's behalf. Dkt. 31; on December 20, 2018. Counsel did so. Dkts. 42–45. After a January 7, 2019, hearing, the Court granted the application for entry of default judgment against New Day Top and in favor of plaintiffs, and referred the matter to Judge Freeman for an inquest into damages. Dkts. 46, 47.

On March 29, 2019, plaintiffs filed submissions calculating the amount owed. Dkts. 52, 53. On February 14, 2020, after reviewing these submissions, and finding that she could not recreate plaintiffs' damages calculations, Judge Freeman directed plaintiffs to make a

---

[4] The Complaint was not amended to include specific factual allegations regarding the five Opt-In Plaintiffs. The Report set out the facts as to each based on their respective declarations submitted in connection with the damages inquest.

4

supplemental submission. Dkt. 59. On February 27, 2020, plaintiffs filed such submissions clarifying their damages calculations and attaching additional supporting materials. Dkts. 60, 61.

On May 29, 2020, Judge Freeman issued an order noting that, contrary to what plaintiffs had represented to the Court, plaintiffs had not served on New Day Top the consent forms filed by the Opt-In Plaintiffs, which would have provided notice of the scope of the Opt-In Plaintiffs' claims. *See* Dkt. 31 at 12; Dkt. 65. Judge Freeman directed plaintiffs' counsel to file proof of service, specifying the dates on which the forms had been served. Dkt. 65. On June 5, 2020, plaintiffs acknowledged that the Opt-In Plaintiffs' consent forms had not been served on New Day Top until June 2, 2020—after default had been entered. Dkt. 66. Plaintiffs nevertheless asserted that New Day Top had adequate notice of the Opt-In Plaintiffs' claims because plaintiffs had served New Day Top with their papers in support of their motion for default judgment, which discussed those claims. *Id.*

To date, New Day Top has not filed a response to any of plaintiffs' submissions.

### III.    The Report and Recommendation

On June 29, 2020, Judge Freeman issued the Report, recommending that this Court award the following damages:

(1) $183,026.99 in damages to Alonso, representing $74,994.85 in unpaid overtime wages; $74,994.85 in liquidated damages; $7,500.00 in statutory damages for failure to provide wage statements and wage notices; and $25,537.29 in prejudgment interest plus additional interest to be calculated by the Clerk of Court; at a rate of nine percent per annum, from March 29, 2019, through the date of final judgment;

(2) $140,093.32 in damages to Flores, representing $55,912.09 in unpaid overtime wages; $55,912.09 in liquidated damages; $6,900.00 in statutory damages for failure

5

to provide wage statements and wage notices; $21,369.14 in prejudgment interest; plus additional interest to be calculated by the Clerk of Court, at a rate of nine percent per annum, from March 29, 2019, through the date of final judgment;

Report at 58–59.

As to the Opt-In Plaintiffs, the Report recommended vacating the default judgment entered as to their claims because the consent forms had not been served on New Day Top before default. *Id.* at 59. But the Report further recommended awarding the following amounts, without prejudgment interest, should the Court find that New Day Top in fact had had sufficient notice:

(1) As to Perez, $172,224.72, representing $86,112.36 in unpaid overtime compensation and another $86,112.36 in liquidated damages;

(2) As to Maldonado, $87,000.00, representing $43,500.00 in unpaid overtime compensation and another $43,500.00 in liquidated damages;

(3) As to Soriano, $93,453.30, representing $46,726.65 in unpaid overtime compensation and another $46,726.65 in liquidated damages;

(4) As to Tapia, $229,153.84, representing $114,576.92 in unpaid overtime compensation and another $114,576.92 in liquidated damages; and

(5) As to Velos, $83,250.00, representing $41,625.00 in unpaid overtime compensation and another $41,625.00 in liquidated damages.

*Id.* at 59–60.

The Report further recommended that plaintiffs be awarded attorneys' fees and costs. Based on her recommendation that damages be awarded only to the Named Plaintiffs, Judge Freeman recommended an attorneys' fee award of $78,576.75, and a cost award of $2,227.77.

6

*Id.* at 60. But the Report recommended that if the Court were to find that New Day Top had had sufficient notice of the Opt-In Plaintiffs' claims before default, it award $104,769.00 in attorneys' fees and $2,970.36 in costs, to account for the Opt-In Plaintiffs' fees and costs. *Id.*

On July 13, 2020, plaintiffs submitted objections to the Report. Dkt. 71. They objected to the recommendations: (1) that the default judgment be vacated as to the Opt-In Plaintiffs, and requested that the Court award damages to the Opt-In Plaintiffs consistent with Judge Freeman's recommendations contingent on the Court finding that New Day Top had adequate notice; (2) that the Court reduce Flores' average number of overtime hours per week for purposes of damages calculations, and instead award Flores $73,035.16 in unpaid overtime wages and $73,035.16 in liquidated damages; and (3) as to attorneys' fees and costs, and instead award $104,769.00 in fees and $2,970.36 in costs contingent on the Court finding that New Day Top had had adequate notice of the Opt-In Plaintiffs' claims before default.

Plaintiffs requested, in the event that the Court were to find that the judgment should be vacated as to the Opt-In Plaintiffs, they be permitted to renew their motion for default judgment as to the Opt-In Plaintiffs.

## II.  Discussion

After a magistrate judge has issued a Report and Recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To accept the portions of a report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *Acevedo v. Lempke*, No. 10 Civ. 5285 (PAE) (HBP), 2014 WL 4651904, at *3 (S.D.N.Y. Sept. 17, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)). When a timely and specific objection has been made, the court is obligated to review the contested issues *de novo*. *See id.*; Fed. R. Civ. P. 72(b)(3);

*Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998). But when the objections simply reiterate previous arguments or make only conclusory statements, the court reviews the report and recommendation for clear error. *Dickerson v. Conway*, No. 08 Civ. 8024 (PAE) (FM), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *see Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) (collecting cases).

The Court has carefully reviewed Judge Freeman's thorough and well-reasoned Report. As to the portions of the Report that were not objected to, the Court's review has revealed no facial error in their conclusions. Thus, the Court adopts the Report as to all aspects to which plaintiffs have not objected. As to the three areas in which there are objections, the Court adopts the Report's recommendations. First, the Court adopts the Report's recommendation that it vacate default judgment as to the Opt-In Plaintiffs, based on the fact that the consent to join forms had not been served before default was entered. Second, the Court adopts the Report's recommendation that Flores be awarded $55,912.09 in unpaid overtime wages and an equivalent amount in liquidated damages, rather than the $73,035.16 for each, requested for the first time at the damages stage. The Court agrees with the Report's finding that the greater amount exceeds the scope of the damages requested in the Complaint, and must be set aside pursuant to Federal Rule of Civil Procedure 54(c). Finally, having adopted the Report's recommendation as to the vacatur of default judgment for the Opt-In Plaintiffs, the Court adopts the Report's recommendation as to attorneys' fees.

### A. Damages Recoverable by the Opt-In Plaintiffs

First, the Court addresses the implications of the delayed service on the defense of the Opt-In Plaintiffs' consent forms. The Opt-In Plaintiffs joined using the opt-in procedure set out in Section 216(b) of the FLSA. Report at 37. As the Report recognizes, the scope of an opt-in

8

plaintiff's potential recovery is defined by the language in the plaintiff's notice of consent form. *Id.*; *see also Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 294 n.8 (S.D.N.Y. 2019); *Saleem v. Corp. Transp. Grp., Ltd.*, No. 12 Civ. 8450 (JMF), 2014 WL 7106442, at *1 (S.D.N.Y. Dec. 9, 2014); *Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1019 (11th Cir. 2007) ("[W]e must interpret [the scope of] consent forms according to the plain meaning of their language."). It follows, as the Report concluded, that, to be on notice of the scope of an opt-in plaintiff's claims, a defendant must have been served with consent forms before a default is entered. Report at 37.

Having found that none of the consent to join forms had been served on New Day Top before default was entered, the Report concluded that New Day Top could not have been on notice of the scope of any Opt-In Plaintiff's claims. *Id.* at 38. To be sure, the Report noted that, before default, plaintiffs had served defendants with (1) a copy of the November 21, 2018, certificate of default, which noted the names of the Opt-In Plaintiffs; and (2) a copy of plaintiffs' motion papers, which provided details regarding the Opt-In Plaintiffs' claims. *Id.* But these, the Report concluded, were inadequate substitutes for the consent to join forms because they were not in the form of a pleading and did not fully explicate the scope of the Opt-In Plaintiffs' claims. *Id.* The Clerk's Certificate of Default only stated that the Opt-In Plaintiffs had filed consent to join forms; it did not set out the content or scope of their claims. *Id.* And plaintiffs' motion papers, although setting out facts and legal arguments, were not pleadings and did not provide the defendant with concrete notice as to the Opt-In Plaintiffs' claims. *Id.* "At bottom," the Report concluded, "it cannot be said that, before obtaining the default judgment in favor of all Plaintiffs in this case, Plaintiffs ever served [New Day Top] with the documents that have been held by courts to define—and afford notice of—the parameters of opt-in plaintiffs' claims." *Id.* at 39.

Plaintiffs dispute the Report's conclusion that the motion papers and the certificates of default were insufficient to provide New Day Top with notice as to the Opt-In Plaintiffs' claims. Objections at 8. Plaintiffs' counsel also represents that they engaged in informal discussions with New Day Top before it failed to appear in the action, and that these put New Day Top on notice of the Opt-In Plaintiffs' claims. *Id.*

The Court agrees with the Report's conclusion that New Day Top lacked sufficient notice of the Opt-In Plaintiffs' claims. Although New Day Top may have been aware of the *existence* of such claims—through motion papers, the certificate of default, and any informal discussions with plaintiffs or their counsel—these were inadequate substitutes for service of the consent to join forms. *Cf. Lin v. Grand Sichuan 74 St Inc.*, No. 15 Civ. 2950 (RA), 2021 WL 4295208, at *5 (S.D.N.Y. Sept. 21, 2021) (finding service of motion for default judgment an insufficient substitute for service of complaint); *Fried v. New York State Off. of Child. & Fam. Servs.*, No. 05 Civ. 5522 (NGG) (AKT), 2008 WL 4360749, at *8 (E.D.N.Y. Sept. 24, 2008) ("[M]ere notice to a defendant that a complaint is pending against it does not constitute actual notice of each and every individual claim asserted in the complaint."). The Court therefore adopts the Report's recommendation to vacate the default judgment as to the Opt-In Plaintiffs.

This deficiency, however, is readily cured. The Opt-In Plaintiffs need only serve their consent to join forms on New Day Top before again filing for default. Assuming New Day Top again fails to appear and that the Opt-in Plaintiffs' default judgment papers are otherwise in good order, the Court stands ready to enter a default judgment on behalf of the Opt-In Plaintiffs, following which it will enter a judgment for damages consistent with the Report's recommendation as to each Opt-In Plaintiff's damages.

**B.     Flores' Damages**

The Report recommended awarding Flores $55,912.09 in unpaid overtime compensation and an equivalent amount in liquidated damages. Report at 34–35, 36. The Report based that calculation on the allegations in the Complaint, which estimated the approximate hours Flores worked as 75 to 85 hours per week. *Id.* at 34–35. The Report therefore assumed Flores had worked approximately 80 hours per week, resulting in 40 hours of overtime pay. *Id.* at 35.

Plaintiffs object to this calculation, requesting instead that the Court award Flores damages based on his revised estimate, which was included in his Declaration submitted in connection with the damages proceeding. Objections at 13. Flores' Declaration increased the estimated hours worked to approximately 87.75 and 96.75 hours per week. Flores Decl. ¶ 11. The Report disregarded this estimate, noting that it "would result in damages that would be markedly higher than those reasonably derivable from the allegations pleaded in the Complaint, where, as noted, Flores pleaded that he worked 75 to 85 hours per week." Report at 34 (citing Compl. ¶ 16). Plaintiffs object, claiming that Flores "do[es] not seek a greater scope of damages than . . . pled in [the] Complaint," but that "[a]s is customary at the damages phase of the proceeding" he merely submitted "evidence to calculate the damages that were requested in the complaint." Objections at 14.

Federal Rule of Civil Procedure 54(c) states that "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." The application of Rule 54(c) here is straightforward. Flores' Complaint estimated his hours to be 75 to 85 hours per week; his post-default Declaration upped his estimate to approximately 87.75 and 96.75 hours per week. Were the Court to adopt the increased range in the Declaration, it would permit Flores to recover a much larger award than the Complaint requested. Rule 54(c) squarely prohibits this.

11

*See Silge v. Merz*, 510 F.3d 157, 159–60 (2d Cir. 2007); *Pac. Westeel, Inc. v. D & R Installation*, No. 01 Civ. 293 (RLC) (AJP), 2003 WL 22359512, at *2 (S.D.N.Y. Oct. 17, 2003) ("The first sentence of Rule 54(c) states that a judgment by default is limited to the relief demanded in the complaint. The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action." (quoting 10 Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2663 (1998))).

### C. Attorneys' Fees and Costs

Plaintiffs object to the Report's recommendation as to attorneys' fees—$78,576.75—only insofar as it was predicated on vacatur of the default judgment in favor of the Opt-In Plaintiffs. Objections at 16. As discussed, however, the Court has adopted the recommendation to vacate default judgment as to those plaintiffs. Accordingly, the Court adopts the Report's recommendation as to attorneys' fees consistent with vacatur of the default judgment—$78,576.75. Report at 49. That said, should plaintiffs seek and obtain default judgment as to the Opt-In Plaintiffs, the Court stands ready to make an additional fee award, consistent with the calculation in the Report, reflecting counsels' as-yet uncompensated work on behalf of the Opt-In Plaintiffs.

### CONCLUSION

For the foregoing reasons, the Court adopts the Report in its entirety. The Court accordingly awards Alonso $183,026.99, plus additional interest to be calculated by the Clerk of Court; awards Flores $140,093.32, plus additional interest to be calculated by the Clerk of Court;

12

and awards $78,576.75 in attorneys' fees and $2,227.77 in costs. Alonso and Flores are directed to submit, by two weeks from the date of this Opinion and Order, an updated interest calculation.

The Court also vacates the default judgment as to the Opt-In Plaintiffs. The Court grants Opt-In Plaintiffs the opportunity to serve New Day Top with their consent to join forms and thereafter, in the event of a default, file anew for a default judgment in favor of those plaintiffs.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: October 7, 2021
     New York, New York